20-1681-cv
Bissonnette v. LePage Bakeries

United States Court of Appeals
for the Second Circuit

AUGUST TERM 2021
No. 20-1681

NEAL BISSONNETTE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED, AND TYLER WOJNAROWSKI, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,
Plaintiffs-Appellants,

v.

LEPAGE BAKERIES PARK ST., LLC, C.K. SALES CO., LLC, AND FLOWERS FOODS, INC.,
Defendants-Appellees.

ARGUED: OCTOBER 22, 2021
DECIDED: MAY 5, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
CONNECTICUT

Before:     JACOBS, POOLER, Circuit Judges, GUJARATI, District Judge.*

---

* Judge Diane Gujarati of the United States District Court for the Eastern District
of New York, sitting by designation.

Plaintiffs, who deliver baked goods in designated territories in Connecticut, brought this action in the United States District Court for the District of Connecticut (Dooley, J.) on behalf of a putative class against the manufacturer of the baked goods that plaintiffs deliver. The plaintiffs allege unpaid or withheld wages, unpaid overtime wages, and unjust enrichment.

The district court compelled arbitration pursuant to an arbitration agreement that is governed by the Federal Arbitration Act ("FAA") and Connecticut law. Plaintiffs claim that they are not subject to the FAA because Section 1 of the FAA excludes contracts with "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The exclusion is construed to cover "transportation workers." The district court held that the plaintiffs did not qualify as transportation workers, ordered arbitration, and dismissed the case. For the reasons below, we affirm.

Judge Jacobs concurs in a separate opinion, and Judge Pooler dissents in a separate opinion.

_____

HAROLD L. LICHTEN, Lichten & Liss-Riordan, P.C., Boston, MA (Matthew Thomson, Zachary L. Rubin, Lichten & Liss-Riordan, P.C., Boston, MA, on the brief), for Plaintiffs-Appellants.

TRACI L. LOVITT, Jones Day, New York, NY (Matthew W. Lampe, Jones Day, New York, NY; Amanda K. Rice, Jones Day, Detroit, MI; Margaret Santen Hanrahan, Ogletree Deakins Nash Smoak & Stewart, P.C., Charlotte, NC, on the brief), for Defendants-Appellees.

DENNIS JACOBS, Circuit Judge:

Plaintiffs deliver baked goods by truck to stores and restaurants in designated territories within Connecticut. They bring this action in the United States District Court for the District of Connecticut (Dooley, J.) on behalf of a putative class against Flowers Foods, Inc. and two of its subsidiaries, which manufacture the baked goods that the plaintiffs deliver. Plaintiffs allege unpaid or withheld wages, unpaid overtime wages, and unjust enrichment pursuant to the Fair Labor Standards Act and Connecticut wage laws. The district court granted the defendants' motion to compel arbitration and dismissed the case.

The decisive question on appeal is whether the plaintiffs are "transportation workers" within the meaning of the Federal Arbitration Act

3

("FAA"). That matters because the FAA, which confers on the federal courts an expansive obligation to enforce arbitration agreements, has an exclusion for contracts with "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. That exclusion is construed to cover "transportation workers." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).

Of the issues subsumed in that question, some are settled. For example, an independent contractor can be a transportation worker, a point germane to this case in which the drivers own their routes and may sell them to others. New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543-44 (2019).

The district court ruled that the plaintiffs are not "transportation workers" and "grant[ed] the Defendants' motion to dismiss in favor of arbitration." Special App'x 15. The court undertook a thorough review of the circumstances that might bear on the question, such as the extent of similarity between the plaintiffs' work and the work of those in the maritime and railroad industries. That analysis is consonant with the prescription in Lenz v. Yellow Transportation, Inc., 431 F.3d 348 (8th Cir. 2005), which approached the question

4

by considering eight non-exclusive factors. We affirm without rejecting or adopting the district court's analysis, which may very well be a way to decide closer cases. We hold that the plaintiffs are not "transportation workers," even though they drive trucks, because they are in the bakery industry, not a transportation industry.

In arriving at that holding, we first consider an alternative ground for affirmance that might obviate the federal statutory question by allowing the arbitration to proceed under Connecticut arbitration law, which has no exclusion for transportation workers; but vexed questions beset a ruling that affirms on that alternative basis. We therefore must come to grips with whether the plaintiffs are "transportation workers." We agree with the district court that they are not. We affirm the district court's order compelling arbitration and dismissing the case.

## I

Flowers Foods, Inc. is the holding company of subsidiaries that produce breads (including Wonder Bread), as well as buns, rolls, and snack cakes in 47

bakeries. Other subsidiaries of Flowers Foods sell exclusive distribution rights for the baked goods within specified geographic areas. (Flowers Foods, Inc. and its subsidiaries, including defendants LePage Bakeries Park St., LLC and C.K. Sales Co., LLC, are hereinafter referred to as "Flowers.") The individuals who purchase the distribution rights--designated independent distributors--market, sell, and distribute Flowers baked goods. The relationship between Flowers and each independent distributor is set out in a Distributor Agreement. <u>See</u> Joint App'x 84-159.

Plaintiffs Neal Bissonnette and Tyler Wojnarowski are two of these independent distributors, both of whom own distribution rights in Connecticut. Bissonnette, who previously delivered baked goods as an employee of Flowers, entered into a Distributor Agreement with Flowers in 2017. Wojnarowski entered into a Distributor Agreement with Flowers in 2018.

Pursuant to the Distributor Agreement, the plaintiffs pick up the baked goods from local Connecticut warehouses and deliver the goods to stores and restaurants within their assigned territories. Subject to certain adjustments, the plaintiffs earn the difference between the price at which the plaintiffs acquire the

bakery products from Flowers, and the price paid by the stores and restaurants. In their roles as independent distributors, the plaintiffs undertake to maximize sales; solicit new locations; stock shelves and rotate products; remove stale products; acquire delivery vehicles; maintain equipment and insurance; distribute Flowers' advertising materials and develop their own (with prior approval by Flowers); retain legal and accounting services; and hire help. The plaintiffs may also profit from the sale of their distribution rights.[1] Though the plaintiffs are permitted to sell noncompetitive products alongside Flowers products, the plaintiffs concede that they do not work for any other company or entity, and that they typically work at least forty hours per week selling and distributing Flowers products.

---

[1] The Distributor Agreement defines the plaintiffs as "independent contractor[s]" for all purposes, and makes clear that the plaintiffs are "independent business[es]." The plaintiffs dispute that characterization. But this distinction no longer matters for FAA purposes because the Supreme Court has clarified that the exclusion for "transportation workers" applies with equal force to employees and to independent contractors. New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543-44 (2019).

7

The Distributor Agreement states that the parties may submit disputes arising from the Distributor Agreement to binding arbitration in accordance with the conditions set forth in an appended Arbitration Agreement. The Arbitration Agreement provides that "any claim, dispute, and/or controversy . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) . . ." Joint App'x 117. Arbitrability is an issue reserved to the arbitrator except for issues concerning the "prohibition against class, collective, representative or multi-plaintiff action arbitration" and the "applicability of the FAA." Id. at 118. The Arbitration Agreement is "governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." Id. at 119.

## II

We have jurisdiction over the district court's order compelling arbitration and dismissing the case because it is a "final decision with respect to an arbitration" pursuant to Section 16(a)(3) of the FAA. See Green Tree Fin. Corp.-

8

Alabama v. Randolph, 531 U.S. 79, 86-87, 89 (2000).

## III

We review de novo the district court's order compelling arbitration. Atlas
Air, Inc. v. Int'l Bhd. of Teamsters, 943 F.3d 568, 577 (2d Cir. 2019).

The Arbitration Agreement, which provides for arbitration "under the
Federal Arbitration Act," elsewhere provides that it "shall be governed by the
FAA and *Connecticut law to the extent Connecticut law is not inconsistent with the
FAA.*" Joint App'x 117, 119 (emphasis added). Since Connecticut arbitration law
has no exclusion for transportation workers, see Conn. Gen. Stat. Ann. § 52-408
(arbitration agreements shall be "valid, irrevocable and enforceable"), Flowers
urges that we compel arbitration pursuant to Connecticut law, regardless of
whether the FAA applies.

The Second Circuit has not ruled on the application of state law to
arbitration agreements under the FAA. One court within this Circuit has
observed that "[m]ultiple courts" have rejected the proposition that "state
arbitration law is preempted" when a plaintiff is excluded from the FAA. Smith

9

v. Allstate Power Vac, Inc., 482 F. Supp. 3d 40, 47 (E.D.N.Y. 2020) (Gershon, J.);

see also Michel v. Parts Auth., Inc., 15 Civ. 5730 (ARR), 2016 WL 5372797, at *3

(E.D.N.Y. Sept. 26, 2016) ("Even assuming the FAA does not apply, New York

state law governing arbitration does apply.").  Other Circuits lean the same way.[2]

Even if state law can compel arbitration when the FAA does not, the

meaning of the phrase "not inconsistent" in the Arbitration Agreement is

unclear.  Joint App'x 119.  Flowers argues that Connecticut law is "not

inconsistent" with the FAA because the FAA does not *preclude* the enforcement

of arbitration agreements with transportation workers.  The plaintiffs counter

---

[2] See, e.g., Harper v. Amazon.com Servs., Inc., 12 F.4th 287, 295 (3d Cir. 2021)
(observing that there is no language in the FAA that "explicitly preempts the
enforcement of state arbitration statutes") (quoting Palcko v. Airborne Express,
Inc., 372 F.3d 588, 595 (3d Cir. 2004)); see also Saxon v. Sw. Airlines Co., 993 F.3d
492, 502 (7th Cir. 2021), cert. granted, 142 S. Ct. 638 (2021) (explaining that even
though the plaintiff qualified for the "transportation worker" exclusion to the
FAA, she "could still face arbitration under state law"); Oliveira v. New Prime,
Inc., 857 F.3d 7, 24 (1st Cir. 2017), aff'd, 139 S. Ct. 532 (2019) (explaining that
exclusion from the FAA pursuant to Section 1 "has no impact on other avenues
(such as state law) by which a party may compel arbitration"); Cole v. Burns Int'l
Sec. Serv., 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[W]e have little doubt that, even
if an arbitration agreement is outside the FAA, the agreement still may be
enforced.").

that Connecticut law *is* inconsistent because the FAA excludes transportation workers while Connecticut law does not.

Prudence counsels against a remand for arbitration to proceed under Connecticut law. The availability of Connecticut arbitration entails the construal of a phrase with a disputed meaning. Ascertaining the intent of the parties would ordinarily involve a remand for fact finding. Although the Agreement provides that issues of arbitrability are reserved for the arbitrator, that expedient may be blocked because the arbitrator's ambit excludes the applicability of the FAA, which is implicated here.

True, "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." New Prime Inc., 139 S. Ct. at 537. But that prescription may not bear upon whether the availability of arbitration under state law can obviate the exclusion. See Harper v. Amazon.com Servs., Inc., 12 F.4th 287, 296 n.8 (3d Cir. 2021) (observing that "no binding precedent requires district courts to ignore arbitrability under state law when the applicability of § 1 is uncertain"); Hamrick v. Partsfleet, LLC, 1 F.4th 1337, 1353 (11th Cir. 2021) ("We would only look to state arbitration law

11

*after* we decided the federal issue of whether the transportation worker exemption applied to the drivers.") (emphasis in original).  Therefore, we proceed to decide whether the plaintiffs fall within the FAA exclusion.

**IV**

The FAA, which reflects a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), nevertheless excludes the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  The class of workers encompassed by that residual clause is "transportation workers."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).  Since neither Congress nor the Supreme Court has defined "transportation worker," we define it by affinity.  The two examples that the FAA gives are "seamen" and "railroad employees."  9 U.S.C. § 1.  These examples are telling because they locate the "transportation worker" in the context of a *transportation industry*.

One explanation advanced for the exclusion is that Congress "did not wish

to unsettle established or developing statutory dispute resolution schemes covering specific workers." See Circuit City, 532 U.S. at 121. But that explanation does not limit or delineate the category. The specification of workers in a *transportation industry* is a reliable principle for construing the clause here.

Our cases have dealt with the exclusion, albeit in quite different contexts and largely prior to Circuit City, 532 U.S. at 119, which narrowed the scope to transportation workers. The cases nevertheless adumbrated the principle that decides this case. The holding in Erving v. Virginia Squires Basketball, 468 F.2d 1064 (2d Cir. 1972)--that the FAA exclusion is limited to workers involved in the transportation industry--is still vital. Id. at 1069. For example, Maryland Casualty Co. v. Realty Advisory Board on Labor Relations, 107 F.3d 979 (2d Cir. 1997), ruled that employees of a commercial cleaner were not covered by the exclusion, which is "limited to workers involved in the transportation industries." Id. at 982. After Circuit City, 532 U.S. at 119, this Court observed that the exclusion did not apply to sheriffs because the clause is "interpreted . . . narrowly to encompass only 'workers involved in the transportation industries.'" Adams v. Suozzi, 433 F.3d 220, 226 n.5 (2d Cir. 2005) (quoting Md. Cas. Co., 107

13

F.3d at 982).

This narrowing principle is likewise applied in other Circuits. In Eastus v. ISS Facility Services, Inc., 960 F.3d 207 (5th Cir. 2020), the Fifth Circuit observed that "because 'engaged in interstate commerce' is preceded by a listing of specific occupations *within the transportation industry*, 'railroad workers' and 'seamen,' 'Section 1 exempts from the FAA only contracts of employment of transportation workers.'" Id. at 209 (emphasis added) (quoting Circuit City, 523 U.S. at 119). Eastus then defined "transportation workers" as "those actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." Id. at 210 (quoting Rojas v. TK Commc'ns, Inc., 87 F.3d 745, 748 (5th Cir. 1996)).

The Eleventh Circuit has held that an account manager at a company that rents and delivers furniture across state borders was subject to the FAA because he was "not a transportation industry worker." Hill v. Rent-A-Ctr., Inc., 398 F.3d 1286, 1288 (11th Cir. 2005). Hill discerned that Congress intended to exclude "a class of workers in the transportation industry, rather than . . . workers who incidentally transported goods interstate as part of their job in an industry that

14

would otherwise be unregulated."  Id. at 1289; see also id. at 1290 ("[I]t is

apparent Congress was concerned only with giving the arbitration exemption to

'classes' of transportation workers within the transportation industry.").  The test

most recently articulated by the Eleventh Circuit is that the transportation

worker exclusion applies if the employee is part of a class of workers: "(1)

employed in the transportation industry; and (2) [who], in the main, actually

engage[] in foreign or interstate commerce."  Hamrick, 1 F.4th at 1349

(remanding for the district court to consider whether last-mile delivery workers

qualify for the exclusion).[3]

Although none of these cases defines "transportation industry," we

conclude that an individual works in a transportation industry if the industry in

which the individual works pegs its charges chiefly to the movement of goods or

---

[3] The plaintiffs in this case cite Martins v. Flowers Foods, Inc., 463 F. Supp. 3d 1290 (M.D. Fla. 2020), which held that Flowers distributors perform their work in the transportation industry.  Id. at 1298.  But the Eleventh Circuit vacated the judgment by a summary order, directing reconsideration in light of Hamrick v. Partsfleet, LLC, 1 F.4th 1337 (11th Cir. 2021).  See Martins v. Flowers Foods, Inc., 852 F. App'x 519 (11th Cir. 2021) (summary order).  The district court has not yet issued a ruling on remand.

15

passengers, and the industry's predominant source of commercial revenue is generated by that movement.

On this basis, the plaintiffs are in the bakery industry. Though plaintiffs spend appreciable parts of their working days moving goods from place to place by truck, the stores and restaurants are not buying the movement of the baked goods, so long as they arrive. The charges are for the baked goods themselves, and the movement of those goods is at most a component of total price. The commerce is in breads, buns, rolls, and snack cakes--not transportation services. See, e.g., Hill, 398 F.3d at 1288-90 (holding that a Rent-A-Center manager whose "duties involved making delivery of goods to customers out of state in his employer's truck" did not work in the "transportation industry"). Although contractual parties cannot effectively stipulate to the status of employees as transportation workers (or not), the Distributor Agreement here recognizes and identifies the industry: "[m]aintaining a fresh market is a fundamental tenet of the *baking industry*." Joint App'x 95 (emphasis added).[4]

---

[4] Although the plaintiffs never leave the state of Connecticut, we do not consider whether this case could be decided on the ground that the interstate element of the exclusion is not satisfied. The issue may not be simple. The baked goods

As the plaintiffs do not work in the transportation industry, they are not excluded from the FAA, and the district court appropriately compelled arbitration under the Arbitration Agreement.

## V

The district court decided this case along the lines of analysis prescribed by the Eighth Circuit in Lenz v. Yellow Transportation, Inc., 431 F.3d 348 (8th Cir. 2005). Lenz adduced eight "non-exclusive" factors for "determining whether an employee is so closely related to interstate commerce that he or she fits within the § 1 exemption":

> [F]irst, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the

originate outside of Connecticut; and there are railroads that operate within a single state, terminus to terminus--the Long Island Railroad comes to mind.

17

FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

Id. at 352. The district court relied upon certain Lenz factors, but not all, and not explicitly. See Bissonnette v. Lepage Bakeries Park St., LLC, 460 F. Supp. 3d 191, 198-202 (D. Conn. 2020). Although we identify no error in the district court's conscientious analysis, we resolve the question before us on the more straightforward ground that the plaintiffs do not work in a transportation industry.

We acknowledge that our approach is not a universal solvent. We do not attempt to decide issues arising across the federal court system as to which of the following may be a "transportation worker":

- Individuals who work for transportation companies but who do not themselves move goods or passengers--for example, supervisors, ticket salespersons, and luggage attendants. Compare Saxon v. Sw. Airlines Co., 993 F.3d 492, 498 (7th Cir. 2021), cert. granted, 142 S. Ct. 638 (2021) (holding that an airline ramp supervisor was excluded from the FAA); Palcko v. Airborne Express, Inc., 372 F.3d 588, 593-94

18

(3d Cir. 2004) (holding that a "field services supervisor" of delivery drivers was excluded), with Eastus, 960 F.3d at 212 (holding that an airline employee who supervised ticketing and gate agents and handled luggage was not excluded); Cole v. Burns Int'l Sec. Serv., 105 F.3d 1465, 1472 (D.C. Cir. 1997) (holding that a security worker at train station was not excluded); Lenz, 431 F.3d at 352-53 (holding that a customer service representative for a trucking company was not excluded).

- Workers who transport goods or passengers within a state, when those goods or passengers originate out of state. See, e.g., Wallace v. Grubhub Holdings, Inc., 970 F.3d 798, 802 (7th Cir. 2020) (holding that food delivery drivers who do not cross state lines are subject to the FAA); Capriole v. Uber Techs., Inc., 7 F.4th 854, 865-66 (9th Cir. 2021) (holding that Uber drivers are subject to the FAA because most of their trips are intrastate).

- Workers for major retailers who transport goods intrastate within a larger transportation network that is interstate. Compare Rittmann v. Amazon.com, Inc., 971 F.3d 904, 917 (9th Cir. 2020), cert. denied, 141 S. Ct. 1374 (2021) (holding that Amazon contractors are transportation workers because they "complete the delivery of goods that Amazon ships across state lines and for which Amazon hires . . . workers to complete the delivery"); Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020), cert. denied, 141 S. Ct. 2794 (2021), reh'g denied, 141 S. Ct. 2886 (2021) (holding that "last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers engaged in . . . interstate commerce," even if they do not themselves cross state lines) (internal quotation marks omitted), with Hamrick, 1 F.4th at 1351 (remanding to consider whether final-mile delivery workers "are in a class of workers employed in the transportation industry that actually engages in foreign or interstate commerce").

We have no occasion to hazard answers to these questions.

**CONCLUSION**

For the reasons stated above, we affirm the order compelling arbitration and dismissing the case.

DENNIS JACOBS, Circuit Judge, concurring:

The obligation to consider appellate jurisdiction ordinarily entails a straightforward analysis. In this case, the straightforward analysis leads to another and difficult question.

Having issued an order to compel arbitration, the district court dismissed the case, and assured the parties that "[i]f, after the arbitration, any party seeks further relief from the Court, the Clerk of Court shall direct assign any such motion or petition to the undersigned." Special App'x 15. The dismissal amounts to a final order, notwithstanding the contemplation of further initiatives--such as confirmation, vacatur, or modification of the award--that may be sought in future litigation. So pursuant to Section 16(a)(3) of the Federal Arbitration Act ("FAA"), we have jurisdiction over this appeal. But the contemplation of future litigation reflects an intuitive appreciation that the district court's role under the FAA may be unfulfilled. The district court, having power to stay proceedings pending arbitration, should not have dismissed the case.

1

## I

When a district court grants an application to enforce an arbitration clause, there is a question as to whether Section 3 of the FAA requires that a stay be entered. Courts across the Circuits are divided on this question; some hold that a stay is mandatory, and others hold that a district court may dismiss the case.[1] In 2015, our decision in Katz v. Cellco Partnership, 794 F.3d 341 (2d Cir. 2015) ("Katz"), articulated the rule as follows: a stay is mandatory when "all claims have been referred to arbitration *and a stay requested*." Id. at 345 (emphasis added). Following Katz, courts in this Circuit are split on whether a stay is required even if no party requests one.[2]

This issue is consequential. When a case is stayed pending arbitration, the order compelling or directing arbitration is interlocutory, and therefore

---

[1] Compare, e.g., Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992) (per curiam) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."), with Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 & n. 21 (1st Cir. 1998) ("[A] court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable.").

[2] Compare China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd., 182 F. Supp. 3d 42, 53 (S.D.N.Y. 2016) (staying case "[p]ursuant to the Second Circuit's decision in Katz" even though parties seeking arbitration requested dismissal); Merrick v. UnitedHealth Grp. Inc., 127 F. Supp. 3d 138, 154

2

unappealable; the parties must proceed forthwith to arbitration. But when such a case is dismissed, the party resisting arbitration can appeal at once, and thereby delay the arbitration, with associated costs and uncertainties. This appears to be where we are now.

How did we get here? In this case, Flowers moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and the FAA, or in the alternative, to compel arbitration. For some reason, Flowers explicitly sought a dismissal "in lieu of a stay," see Joint App'x 73-74, and the plaintiffs, who resisted arbitration, did not request a stay. Thus, the district court granted Flowers' "motion to dismiss in favor of arbitration," closed the case, and directed the Clerk of Court to assign any post-arbitration petitions for relief to the same judge. Special App'x 15-16. Today, we have affirmed the order compelling arbitration and dismissing the case.

---

(S.D.N.Y. 2015) (staying the action even though "no party has requested a stay"), with Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (ruling that because the plaintiff did not request a stay, "Section 3 did not require the district court to stay the proceedings"); Zambrano v. Strategic Delivery Sols., LLC, No. 15 Civ. 8410, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) (observing that "because Defendants seek dismissal rather than a stay . . . this Court has discretion whether to stay or dismiss Plaintiffs' action under the FAA," and ultimately staying the case).

<u>Katz</u> can be read to mean that, when no stay is requested, the district court retains discretion to stay the case *or* dismiss it. That reading is invited by <u>Katz</u> without being compelled by it.

**II**

<u>Katz</u> construed Section 3 of the FAA to mandate a stay when "all claims have been referred to arbitration and a stay requested." 794 F.3d at 345. However, the FAA mandates a stay whether or not a party requests one. This construal is consistent with the purpose of the FAA.

Properly construed, the text of Section 3 bars a court from enforcing an arbitration clause <u>sua sponte</u>; but if a party applies for enforcement of the clause, Section 3 requires a court that enforces it to stay proceedings in the interim:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,*** providing the applicant for the stay is not in default in proceeding with such arbitration.

4

9 U.S.C. § 3 (emphasis added). Read naturally and in context, the referenced "application of one of the parties" is the application to enforce the arbitration clause. The text does not contemplate (let alone require) a separate application to stay proceedings in district court. See Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright.") (emphasis in original).

Reading Section 3 to require a stay pending arbitration regardless of whether a stay has been requested is consistent with the FAA's pro-arbitration posture.[3]   Congress intended the FAA to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). That is why the FAA "provides two parallel devices for enforcing an arbitration

---

[3] For what it is worth, Katz does not clearly say otherwise. Katz observes that Section 3's "plain language specifies that the court 'shall' stay proceedings pending arbitration, provided an application is made and certain conditions are met." 794 F.3d at 345. Katz does not specify the type of "application" that must be made, though (in my view) Katz does (and must be read to) reference the application to enforce an arbitration clause. Nor does Katz point to anything in the statute that says that a mandatory stay is dependent upon an explicit request for a stay.

5

agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3"--at issue here--"and an affirmative order to engage in arbitration, § 4." Id. It is hard to square congressional intent with the idea that Section 3's mandatory stay is conditional upon a party's explicit request for a stay alongside its application to compel arbitration.

The FAA provision governing appeals underscores the congressional policy of "rapid and unobstructed enforcement of arbitration agreements." Moses, 460 U.S. at 23. Section 16 forecloses an appeal from an order that directs the parties to proceed with arbitration, including a stay order under Section 3:

> Except as otherwise provided in section 1292(b) of title 28 [interlocutory decisions], an appeal may not be taken from an interlocutory order--
> (1)    granting a stay of any action under section 3 of this title;
> (2)    directing arbitration to proceed under section 4 of this title;[4]
> (3)    compelling arbitration under section 206 of this title [providing for enforcement abroad and court-appointed arbitrators]; or

---

[4] 9 U.S.C. § 4, which deals with enforcement of arbitration clauses regardless of whether the contract has become the subject of federal litigation, provides in part: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

6

> (4) refusing to enjoin an arbitration that is subject to this title.

See 9 U.S.C. § 16(b). That provision "is a pro-arbitration statute designed to prevent the appellate aspect of the litigation process from impeding the expeditious disposition of an arbitration." Augustea Impb Et Salvataggi v. Mitsubishi Corp., 126 F.3d 95, 99 (2d Cir. 1997) (quoting David D. Siegel, Practice Commentary: Appeals from Arbitrability Determinations, 9 U.S.C.A. § 16, at 352 (West Supp. 1997)).[5] The purpose is defeated if a dismissal is entered instead of a stay. See Arabian Motors Grp. W.L.L. v. Ford Motor Co., 19 F.4th 938, 942 (6th Cir. 2021) ("Because a dismissal, unlike a stay, permits an objecting party to file an immediate appeal, a district court dismissal order undercuts the pro-arbitration appellate-review provisions of the Act.").

---

[5] Not to the contrary is the FAA provision that an appeal may be taken from "a final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). The FAA allows an appeal from a final decision that is entered after the arbitration has run its course, id., as well as appeals from, inter alia, orders that refuse a stay of an action or deny a petition to arbitrate, see 9 U.S.C. § 16(a)(1).

## III

Our opinion in <u>Katz</u> is regrettable, particularly as the Supreme Court has now given guidance that reinforces my view of Section 3. <u>See</u> <u>Badgerow v. Walters</u>, 142 S. Ct. 1310 (2022) ("<u>Badgerow</u>"). <u>Badgerow</u> conducted a thorough analysis of the FAA's text, and held that the "look through" approach for finding federal jurisdiction in petitions under Section 4 does not apply to petitions under Sections 9 and 10 of the FAA. This holding has ramifications when a district court dismisses a case after compelling arbitration because a dismissal will certainly require a district court to find an independent jurisdictional basis whenever a new FAA petition arises from the same case. A stay, however, may enable the court and the parties to sidestep these consequences.

It is settled that a federal court deciding whether to enforce an arbitration agreement under Section 4 must find an independent jurisdictional basis, either on the face of the petition (for diversity jurisdiction) or by looking through to the petition to see if the underlying controversy arises under federal law (for federal question jurisdiction). <u>See</u> <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 62 (2009); <u>Hermes of Paris, Inc. v. Swain</u>, 867 F.3d 321, 324 (2d Cir. 2017). But, under <u>Badgerow</u>, a district court lacks jurisdiction over a petition to confirm or vacate

8

an arbitral award under Sections 9 and 10, respectively, unless the jurisdictional basis appears on the "face of the application itself." Badgerow, 142 S. Ct. at 1317-18. This means that there must either be diversity jurisdiction, or a federal question with respect to the award's confirmation or vacatur (no examples of the latter are supplied in Badgerow itself). Id. Unlike with Section 4 petitions, courts may not locate federal question jurisdiction by looking through to the underlying controversy. Id. As a result of this ruling, many more Section 9 and 10 petitions will be adjudicated in state courts. Id. at 1321-22. This will raise an impediment to parties seeking federal court assistance to facilitate their arbitrations when there is no jurisdictional basis on the face of their petitions.

It is too early to say whether issuance of a stay pursuant to Section 3 may allow parties to seek enforcement, vacatur, or modification of an award, 9 U.S.C. §§ 9-11, or seek other assistance under the FAA, see id. §§ 5 (appointment of arbitrators), 7 (summoning witnesses), without need for an independent basis for federal jurisdiction--though Justice Breyer's dissent in Badgerow suggests as much.[6] As this Court has observed, "practitioners who wish to preserve access

_____

[6] Indeed, foreseeing the chaos post-Badgerow, Justice Breyer suggested that a stay is the solution: "[i]f a party to an arbitration agreement files a lawsuit in federal court but then is ordered to resolve the claims in arbitration, the federal court may stay the suit and possibly retain jurisdiction over related FAA

9

to federal courts for later disputes over arbitrators, subpoenas, or final awards [may] attempt to 'lock in' jurisdiction by filing a federal suit first, followed by motions to compel and a stay of proceedings." Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 387 (2d Cir. 2016), abrogated on other grounds by Badgerow v. Walters, 142 S. Ct. 1310 (2022); see also Ian R. MacNeil et al., Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act § 9.2.3.1 (Supp. 1999) (explaining that when a district court stays proceedings pending arbitration, "[a]fter an award, parties desiring to confirm, vacate, or modify the award, can return to the federal court in which the stayed litigation is pending for determination of those issues," as "[t]he court had federal question subject matter jurisdiction and has never lost it.").

In short, the stay of a suit pending arbitration is (in my view) arguably compelled and certainly prudent.

---

motions." Badgerow, 142 S. Ct. at 1326 (Breyer, J., dissenting) (citing § 3, Vaden v. Discover Bank, 556 U.S. 49, 65 (2009)). For its part, the Badgerow majority did not address the effect of a stay on a district court's jurisdiction to resolve later-filed FAA petitions; it explicitly declined to consider whether a district court would have jurisdiction to resolve a Section 5 petition that is made "in tandem with" a Section 4 petition. Id. at 1320 n.6.

10

POOLER, *Circuit Judge*, dissenting:

The plaintiffs are commercial truck drivers who deliver the defendants' packaged baked goods to supermarkets and retail outlets in Connecticut. They allege that the defendants deprived them of the legal protections owed to employees, including the right to overtime premiums, by misclassifying them as independent contractors. On appeal now is whether this serious charge should be litigated, as the drivers want, or arbitrated, as the company prefers. The parties have an arbitration agreement. But the Federal Arbitration Act, which empowers federal courts to enforce those agreements, does not apply to employment contracts of "any . . . class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1—that is, transportation workers, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The key question, then, is whether the plaintiffs are transportation workers.

I would hold that they are. The "one area of clear common ground" among federal courts addressing the transportation worker exemption is that truck drivers qualify. *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008) (collecting cases); *see also, e.g.*, *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if Lenz were a truck driver, he would be

1

considered a transportation worker under § 1 of the FAA."). The majority's contrary conclusion—that because the plaintiffs are truckers for a bakery company, they "are in the bakery industry" and therefore not transportation workers, Maj. Op. at 16—is textually and precedentially baseless. Rather, "a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party[.]" *Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012). Because I cannot join the majority in sending this dispute to arbitration, I respectfully dissent.

**I.      The Plaintiffs Are Transportation Workers.**

"[N]othing" in the FAA "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The majority and I agree that the Distributor Agreements, the ones the plaintiffs assert misclassify them as independent contractors, are "contracts of employment." Contracts of employment include all "agreements to perform work," whether by employees or independent contractors. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 544 (2019).

I part ways, though, with the majority's conclusion that the plaintiffs are not transportation workers. Although the Supreme Court has not yet defined who precisely qualifies as a transportation worker,[1] there are clearer lodestars than the majority acknowledges. As Justice Barrett, then of the Seventh Circuit, recently summarized:

> Both we and our sister circuits have repeatedly emphasized that transportation workers are those who are actually engaged in the movement of goods in interstate commerce. To determine whether a class of workers meets that definition, we consider whether the interstate movement of goods is a central part of the class members' job description. Then, if such a class exists, we ask in turn whether the plaintiff is a member of it. Sometimes that determination is easy to make—as it is for truckers who drive an interstate route. Sometimes that determination is harder—as it is for truckers who drive an intrastate leg of an interstate route. Whether easy or hard, though, the inquiry is always focused on the worker's active engagement in the enterprise of moving goods across interstate lines. That is the inquiry that *Circuit City* demands.

*Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801-02 (7th Cir. 2020) (citations and internal quotation marks omitted).

This Circuit's cases fit well within the mainstream. In our foundational case, we held that Section 1 did not exempt from arbitration a dispute concerning

---

[1] That definition may come soon. *See Sw. Airlines Co. v. Saxon*, No. 21-309 (U.S. argued Mar. 28, 2022) (addressing whether workers who load or unload goods from vehicles that travel in interstate commerce, but who do not themselves do the transporting, are "transportation workers").

the collective bargaining agreement of factory workers who manufactured automotive electrical equipment. *Signal-Stat Corp. v. Loc. 475, United Elec. Radio & Mach. Workers of Am.*, 235 F.2d 298, 303 (2d Cir. 1956), *overruled on other grounds by Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Loc. 812*, 242 F.3d 52 (2d Cir. 2001). Rather than being "actually engaged in interstate and foreign commerce," we observed, the workers were "merely engaged in the *manufacture* of goods for interstate commerce." *Id.* (emphasis added). Two decades later, we concluded that Julius "Dr. J" Erving, the basketball player, was not a transportation worker because he "clearly is not involved in the transportation industry." *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972). To bolster the point, we cited the First Circuit's formulation of the *Signal-Stat* inquiry as asking whether a worker is "involved in, or closely related to the actual movement of goods in interstate commerce." *Id.* (citing *Dickstein v. duPont*, 443 F.2d 783 (1st Cir. 1971)). Since *Signal-Stat* and *Erving*, we have held the exemption inapplicable to other individuals whose jobs did not involve transportation. *E.g.*, *Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 982 (2d Cir. 1997) (commercial cleaning workers). On the other hand, the "cases in this Circuit that have found that a worker falls under the

4

residuary exemption . . . all involve workers who either physically move goods through interstate commerce, such as truck drivers, or workers who are closely tied to this movement[.]" *Kowalewski*, 590 F. Supp. 2d at 485.

Understood against this backdrop, the plaintiffs here are paradigmatic transportation workers. They "work at least forty hours per week delivering the" defendants' baked goods. App'x at 17 ¶ 33. This work consists of driving commercial delivery trucks "to stores within a territory designated by Defendants, delivering Defendants' products to these stores, and arranging the products on the shelves according to Defendants' standards." App'x at 17 ¶ 33. At the end of the day, the plaintiffs return to the defendants' warehouse, upload data to the defendants' system, and sort stale bread for resale by the defendants. Unlike the factory workers in *Signal-Stat*, the plaintiffs are not "merely engaged in the manufacture of goods for interstate commerce," but rather are "actually engaged in . . . commerce." 235 F.2d at 303. And like seamen and railroad employees—against whom a putative transportation worker's work should be measured, *see Circuit City*, 532 U.S. at 115—the plaintiffs' daily work is "centered on the transport of goods in interstate or foreign commerce," *Wallace*, 970 F.3d at 802 (so characterizing the work of seamen and railroad workers).

5

That the plaintiffs do not themselves cross state lines during their routes is of no moment. "The great weight of authority . . . holds that interstate travel is not strictly necessary" to qualify someone as a transportation worker. *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021). The First and Ninth Circuits, for instance, have held that so-called "last-mile delivery drivers" for Amazon are transportation workers "[b]y virtue of their work transporting goods or people 'within the flow of interstate commerce,'" despite never personally crossing state lines. *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020); *see also Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020).

So too, here, the plaintiffs "form a vital link in the chain of interstate transportation." *Haider*, 2021 WL 1226442, at *4. The goods they transport are delivered to the defendants' warehouse from one of their commercial bakery locations outside Connecticut; the plaintiffs then transport those goods to stores and retail locations in-state. Like the Amazon drivers, the plaintiffs "carry the goods for a portion of [a] single interstate journey," *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 251 (1st Cir. 2021), and are "indispensable parts of [an interstate] distribution system," *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343 (D.

6

Mass. 2019). These facts also distinguish the plaintiffs from drivers for Grubhub, the food delivery app, whom the Seventh Circuit recently deemed not to be transportation workers. *Wallace*, 970 F.3d at 803. Those workers drive typically short distances to deliver take-out orders prepared by local restaurants. The Seventh Circuit concluded that they are not transportation workers because—unlike the plaintiffs here—they are not "engaged *in the channels* of foreign or interstate commerce," even if the ingredients from which a meal is made crossed state lines. *Id.* at 802 (emphasis in original) (quotation marks omitted).

It is also immaterial that the plaintiffs perform a few customer service and sales tasks beyond their transportation work. A worker's performance of some tasks beyond transportation does not necessarily remove her from Section 1's ambit. To be sure, some courts have held that a transportation worker's job duties must be more than "tangentially related to [the] movement of goods." *Lenz*, 431 F.3d at 351-52; *see also, e.g.*, *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005) (requiring that transportation work be more than "incidental" to a worker's employment). But it is impossible to conclude on this record that transportation work is merely incidental or tangential to the plaintiffs' employment. The title of their contracts—"Distributor Agreements"—

7

defines their principal purpose. The additional tasks the Distributor Agreements obligate the plaintiffs to perform emanate from the delivery work. And the defendants offer no evidence to counter the complaint's allegations that the actual delivery of product constituted the lion's share of the plaintiffs' work.[2] The plaintiffs are thus a far cry from Hill, an account manager for a furniture and equipment rental business who only occasionally delivered rental furniture out of state, *Hill*, 398 F.3d at 1289, and Lenz, a customer service representative for a trucking company who neither "directly transported goods" nor "directly supervise[d] [any] drivers in interstate commerce," *Lenz*, 431 F.3d at 352-53.

---

[2] Indeed, in a case strikingly similar to this one, the District of Massachusetts recently concluded that a group of the same defendants' Massachusetts-based delivery drivers were "transportation workers" under the FAA, principally because those plaintiffs had submitted "sworn affidavits stating that they spend the majority of their time making deliveries," "there [was] nothing in the record to suggest that Plaintiffs were carrying out all of the other responsibilities included in the[ir] Distributor Agreements and business plans, or that those other responsibilities took up more time than driving," and, "[e]ven assuming that Plaintiffs' work primarily involve[d] . . . engaging in tasks that only relate to delivery of the interstate goods rather than actually performing the deliveries themselves, those activities are still so closely related to interstate commerce that Plaintiffs [were] practically a part of it." *Canales v. Lepage Bakeries Park St. LLC*, No. 1:21-cv-40065-ADB, 2022 WL 952130, at *5-*6 (D. Mass. Mar. 30, 2022). The court therefore declined to compel arbitration under the FAA of those drivers' employment misclassification claims against the defendants. *Id.* at *1.

8

Because the movement of goods through interstate commerce is a central part of the plaintiffs' occupation as truckers, I would hold that they belong to a "class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and that the FAA does not apply to their Distributor Agreements.

**II.     The Majority's Errors.**

The majority's contrary conclusion is supported by neither the FAA's text nor any case interpreting it. The majority begins, accurately enough, with this Court's tendency to characterize the transportation worker exemption as "limited to workers involved in the transportation industry." Maj. Op. at 13. I have no quarrel with this premise. But I cannot endorse the tortured reasoning that follows. Finding that no case has given a satisfactory definition to the term "transportation industry," the majority posits, without citation, that "an individual works in a transportation industry if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement." Maj. Op. at 15-16. The majority then concludes that, "[o]n this basis, the plaintiffs are in the bakery industry," not the transportation industry, because the stores and restaurants to which they deliver

9

the defendants' baked goods are "not buying the movement of the baked goods, so long as they arrive. The charges are for the baked goods themselves, and the movement of those goods is at most a component of total price." Maj. Op. at 16. Long story short, the plaintiffs are not transportation workers, even though they "spend appreciable parts of their working days moving goods from place to place by truck," because they do not work for a trucking company. Maj. Op. at 16.

This cannot be. It is troubling enough that the majority offers no basis—not textual, not precedential, not from the business world or even a dictionary—for its supposed definition of "transportation industry." That definition, with its unexplained focus on how the "source of commercial revenue is generated," is also needlessly convoluted, compared with more natural definitions of the term: for instance, that a "transportation industry" is one "whose mission it is to move goods," *Tran v. Texan Lincoln Mercury, Inc.*, No. H-07-1815, 2007 WL 2471616, at *5 (S.D. Tex. Aug. 29, 2007), or one "directly involved in the movement of goods," *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *6 (W.D. Tex. June 3, 2008).

At base, though, the majority simply misconstrues how courts use the term "transportation industry." As discussed, we have sometimes described workers whose occupations did not involve the movement of goods as being outside the transportation industry. So it was with Dr. J in *Erving*, 468 F.2d at 1069; the commercial cleaners in *Maryland Casualty Co.*, 107 F.3d at 982; and the sheriffs in *Adams v. Suozzi*, 433 F.3d 220, 226 n.5 (2d Cir. 2005). Some cases have also addressed whether workers at a transportation company who are "one step removed from the actual physical delivery of goods," like the customer service representative Lenz, can still qualify as transportation workers. *Kowalewski*, 590 F. Supp. 2d at 483 n.6; *Lenz*, 431 F.3d at 352.

Until today, however, we have never held that a worker whose full-time job was to move goods through interstate commerce was not a transportation worker merely because she did not work for a trucking or shipping company or an airline. To the contrary, other courts regularly—and correctly—reject this proposition. *See, e.g.*, *Kienstra*, 702 F.3d at 957 ("[A] trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party[.]"); *Saxon v. Sw. Airlines Co.*, 993 F.3d 492, 497 (7th Cir. 2021) ("[A] transportation worker need not work for a transportation company[.]");

11

*Waithaka*, 966 F.3d at 23 ("[A] class of workers [need not] be employed by an interstate transportation business or a business of a certain geographic scope to fall within the Section 1 exemption[.]"); *Canales*, 2022 WL 952130, at *6 (rejecting the argument that "an employer [must] be a transportation company for § 1 to apply").

These observations align with the FAA's text: Section 1 asks whether a worker belongs to a class of workers "engaged in interstate or foreign commerce." 9 U.S.C. § 1. It does not ask for whom the worker undertakes her transportation work. Of course, a company is entitled to decide for business reasons to transport its own goods. But the truckers it hires do not cease to be transportation workers the moment they are brought in-house. If the workers' principal daily tasks involve them in the actual movement of goods through interstate commerce, they are transportation workers.

The majority's novel rule that only those employed by transportation companies can be transportation workers finds no more support from the out-of-Circuit cases it cites. The majority describes *Hill*, the Eleventh Circuit case, as holding that "an account manager at a company that rents and delivers furniture across state borders was not excluded from the FAA because he was 'not a

transportation industry worker.'" Maj. Op. at 14 (quoting *Hill*, 398 F.3d at 1288). But the majority omits the court's reasoning. It was not because Hill worked for a "company that rents and delivers furniture" that he was deemed not to be a transportation worker. Instead, the court focused on the nature of Hill's work for the company. Hill was not "within a class of workers within the transportation industry" because he was an account manager who only "incidentally transported goods interstate" as part of that job. *Hill*, 398 F.3d at 1289.

The majority also wrongly contends that *Eastus v. ISS Facility Services, Inc.*, a Fifth Circuit case, embraces its "narrowing principle." Maj. Op. at 14 (citing 960 F.3d 207 (5th Cir. 2020)). That case concerned a supervisor of ticketing and gate agents at an international airport. *Eastus*, 960 F.3d at 208. Applying the "operative standard" that the transportation worker exemption covers only those "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are," *id.* at 209-10, the court concluded that Eastus did not qualify because although her "duties could at most be construed as loading and unloading airplanes," she "was not engaged in an aircraft's actual movement in interstate commerce," *id.* at 212. *Hill* and *Eastus* thus recognize what the majority does not: that the FAA requires

13

characterization of the work done by a particular worker claiming entitlement to the residuary exemption, not merely the work of the company as a whole.

In any event, the majority's analysis fails on its own terms. Even assuming that "[t]he specification of workers in a *transportation industry* is a reliable principle for construing the [residual] clause," Maj. Op. at 13, the plaintiffs *do* work in a transportation industry: trucking. A company may employ different classes of workers, some in transportation and some outside it. I have little doubt that the people who bake Wonder Bread, like the factory workers in *Signal-Stat*, are not transportation workers. *See* 235 F.2d at 303. But the plaintiffs' mission, reflected on the first page of their Distributor Agreements, is to move goods. *See* App'x at 86 (stating that plaintiffs will be operating a "distributorship business"). They are "active[ly] engage[d] in the enterprise of" interstate transportation in a way those bakers are not. *Wallace*, 970 F.3d at 802. And to the extent that, in efficiently delivering the defendants' baked goods, the plaintiffs incidentally satisfy that "fundamental tenet of the bakery industry" of "[m]aintaining a fresh market," App'x at 95, 132, they do so in the same way that all truckers serve the industries of the companies whose products they deliver.

14

There are few classes of workers more paradigmatically "engaged in foreign or interstate commerce" than those who operate commercial trucks to deliver products. Abandoning this universally recognized principle, the majority departs from the FAA's text, this Circuit's cases, and those of our sister circuits.

## III.   Other Issues.

Before concluding, I address two other brief points. The first is the defendants' argument, unavailing in my view, that Connecticut law provides an alternative basis to compel arbitration regardless of the FAA's applicability. A few district courts in this Circuit have enforced arbitration clauses under state law where the clauses "d[id] not plausibly suggest that the parties intended for the clause[s] to be discarded in the event that the FAA was found inapplicable." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 359 (S.D.N.Y. 2021); *see also, e.g.*, *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 528 (S.D.N.Y. 2003); *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840 (CBA) (CLP), 2017 WL 10187756, at *4 (E.D.N.Y. Mar. 30, 2017). This case is different. The arbitration agreement states that it "shall be governed by the FAA and <u>Connecticut</u> law to the extent <u>Connecticut</u> law is not inconsistent with the FAA." App'x at 199 (underlining in original). But Connecticut law and the FAA are crucially inconsistent here: While the FAA

15

exempts transportation workers like the plaintiffs, Connecticut law contains no analogous carve-out. *See* Conn. Gen. Stat. Ann. § 52-408. Given this inconsistency, the arbitration agreement itself prohibits recourse to Connecticut law should the FAA be held inapplicable.

My second brief point is in response to the concurrence's view that, once a court decides that arbitration is appropriate, "the FAA mandates a stay whether or not a party requests one." Concur. Op. at 4. To be clear, because I conclude that arbitration should not have been compelled here, resolution of this issue is not necessary to my analysis. I write only to correct what I see as the concurrence's misreading of Section 3 of the FAA. That provision states that a district court, "upon being satisfied that [an issue] is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 3's use of the mandatory "shall," we have held, means that where a party specifically applies for a stay pending the outcome of arbitration, the district court lacks discretion to dismiss the case instead. *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).

16

It does not follow, however, that where a party does not request a stay—or where, as here, a party expressly seeks dismissal—a district court is still required to issue a stay. Section 3 is triggered "on application of one of the parties [to] stay the trial" and where, among other things, the "applicant for the stay is not in default." 9 U.S.C. § 3. This reference to the "applicant for the stay" thus squarely contradicts the concurrence's assertion that "[t]he text does not contemplate (let alone require) a separate application to stay proceedings in the district court." Concur. Op. at 5. Accordingly, where a party does not request a stay, there is no "application [to] stay the trial," and a district court retains the authority to dismiss the action. *See Katz*, 794 F.3d at 346 (explaining that, absent a statutory mandate to stay proceedings, district courts "enjoy an inherent authority to manage their dockets"); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 277 (E.D.N.Y. 2019) ("Although Section 3 of the FAA only speaks of staying proceedings, it is well-settled than an arbitrable dispute may be dismissed in lieu of a stay if the defendant requests dismissal."); *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-CV-08410, 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) ("[B]ecause Defendants seek dismissal rather than a stay . . . this Court has discretion whether to stay or dismiss Plaintiffs' action under the FAA.");

17

*Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (endorsing this view).

## Conclusion

The plaintiffs' daily work transporting goods in the stream of interstate commerce places them in the transportation worker exemption's heartland. They belong to a "class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and the FAA does not apply to their Distributor Agreements. I respectfully dissent.