ALTIMARI, Circuit Judge:
 

 Defendant-appellant Local 32B-32J, Service Employees International Union (“Union” or “Local 32B-32J”) appeals from an order of the United States District Court for the Southern District of New York (Cedarbaum, J.) granting a preliminary injunction in favor of plaintiff-appellee Maryland Casualty Co. (“Maryland”) enjoining an arbitration proceeding.
 
 See
 
 1996 WL 363136 (S.D.N.Y. June 28, 1996). The district court concluded that the issues in dispute, concerning (1) whether certain employees of a cleaning contractor were to be retained to clean a building net-leased by Maryland after the contractor was replaced by another contractor, and (2) whether the cleaning employees were to be compensated at Union rates, were not subject to arbitration under the explicit terms of the collective bargaining agreement in force between the parties. ■ Consequently, the district court enjoined any arbitration of the matter. We agree that the issues in dispute are not arbitrable under the terms of the collective bargaining agreement and, therefore, affirm.
 

 Background
 

 Maryland net-leases an office building located at 59 John Street (the “Building”). Local 82B-32J represents approximately 65,-000 commercial and residential building service employees, such as porters, cleaners; and handypersons, in the New York metropolitan area. The defendant-appellee Realty Advisory Board on Labor Relations (“RAB”) is a multi-employer association that represents commercial braiding owners and managing agents in collective bargaining agreements with the Union. RAB negotiates the agreement with the Union, and RAB members are bound by the agreement unless they notify RAB in advance that they do not intend to participate in the agreement.
 

 The collective bargaining agreement at issue in this case (the “Agreement”) was originally in force from January 6, 1993 until December 31, 1995, but was extended to
 
 *-603
 
 continue until December 31, 1998. Article 1.1 of the Agreement provides that “[t]his agreement shall apply to all classifications of service employees employed by the Employer, excluding, except as otherwise provided herein, employees employed by cleaning and maintenance contractors.” Under Article 11.1 of the Agreement, the Employer is obligated not to make any agreement or arrangement “for the performance of work and/or for the categories of work heretofore performed by employees covered by this agreement,” except as provided by the remainder of Article II. The remainder of Article II provides, in relevant part, that the Employer shall give advance written notice to the Union of its contracting for services or any change of contractors, and that:
 

 3. The Employer shall require the contractor to retain all bargaining unit employees working at the location at the time the contract was awarded and to maintain the existing wage and benefit struc-ture_ The Employer agrees that employees then engaged in the work which is contracted out shall become employees of the initial contractor or any successor contractor, and agrees to employ or re-employ those employees working for the contractor when the contract is terminated or cancelled....
 

 6. This Article is intended to be a work preservation provision for the employees employed in a particular building.
 

 Until the middle of 1980, cleaning employees at the Building were employed by Maryland through its managing agent, Newmark & Company (“Newmark”). At that time, five cleaning employees were employed: three day porters and two night porters. In July of that year, Maryland contracted out the Building’s “general cleaning services” to Electra Cleaning Contractors (“Electra”). In 1983, American Building Maintenance (“American”) replaced Electra as the Budding’s cleaning contractor, and in 1991 Partners Cleaning Contractors (“Partners”) replaced American. Partners’s employees were all members of the Union.
 

 In June of 1996, Maryland hired Helms-ley-Spear, Inc. (“Helmsley”) to manage the building. Helmsley cancelled the cleaning contract with Partners, and hired Commercial Building Maintenance (“Commercial”), whose employees do not belong to the Union. Commercial did not rehire six employees of Partners working at the Building at the time it replaced Partners as the cleaning contractor. As a result, the Union served a notice of arbitration on Maryland and RAB demanding, pursuant to Article II of the Agreement, that (1) the six Partners’s employees be reinstated, and (2) that all of Commercial’s employees who worked at the Building be given the same benefits and wages provided to Union members under the Agreement.
 

 Maryland sought a temporary restraining order and preliminary injunction enjoining the arbitration proceeding. According to Maryland, the dispute with the Union is not covered by the Agreement’s arbitration clause because it is not an “Employer” within the meaning of the Agreement, and because the six Partners’s cleaning employees who worked at the Building are not covered by Article II of the Agreement. After argument and farther submission of ■ affidavits, the district court, as explained in more detail below, concluded that the six Partners’s cleaning employees at issue were not covered by Article II of the Agreement and granted Maryland’s motion for a preliminary injunction. The court did not require Maryland to post security.
 

 The Union sought a stay pending appeal, which was withdrawn on consent and the appeal expedited. On appeal, the Union contends that the district court: (1) erred in concluding that the dispute is not arbitrable under the terms of the Agreement; (2) abused its discretion in granting the preliminary injunction without finding the requisite irreparable harm; and (3) abused its discretion in issuing the preliminary injunction without requiring Maryland to post security.
 

 Discussion
 

 1. Subject matter jurisdiction
 

 As a preliminary matter, both parties request that the Court rule that it has jurisdiction to hear an appeal of an interlocutory order enjoining an arbitration proceeding.
 
 *-602
 
 There are two potential bases for such jurisdiction: (1) Section 16(a)(2) of the Federal Arbitration Act (“Act”), 9 U.S.C. § 16(a)(2), which provides for appeals of “an interlocutory order granting ... an injunction against an arbitration that is subject to this title,” and (2) 28 U.S.C. § 1292(a)(1), which provides for appeals of interlocutory orders granting injunctions.
 

 Clearly, the Court has appellate jurisdiction under § 16(a)(2) of the Act. Section 2 of the Act makes all contracts entailing transactions in commerce subject to the Act. Although § 1 of the Act excludes coverage for “contracts of employment of seamen, railroad employees, or any other class of employees engaged in foreign or interstate commerce,” that exclusion is not applicable in this case because in our Circuit § l’s exclusion is limited to workers involved in the transportation industries.
 
 See Erving v. Virginia Squires Basketball Club,
 
 468 F.2d 1064, 1069 (2d Cir.1972).
 
 See also Central States, Southeast and Southwest Areas Pension Fund v. Central Cartage Co.,
 
 84 F.3d 988, 993 (7th Cir.) (same rule in Seventh Circuit),
 
 cert. denied,
 
 — U.S. —, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996). Since collective bargaining agreements are contracts entailing transactions in commerce, the bargaining agreement in the instant case falls within the purview of the Act, and appellate jurisdiction over the district court’s order is conferred under § 16(a)(2).
 

 ' With respect to jurisdiction under 28 U.S.C. § 1292(a)(1), the parties contend that prior to the enactment of § 16 of the Act in 1988, this Court, in
 
 Lummus Co. v. Commonwealth Oil Refining Co.,
 
 297 F.2d 80, 85-86 (2d Cir.1961), and its progeny, held that an order staying an arbitration proceeding and denying a stay of the federal action pending arbitration is not an interlocutory injunction appealable under 28 U.S.C. § 1292(a)(1).
 
 See also Diematic Mfg. Corp. v. Packaging Indus.,
 
 516 F.2d 975, 977 (2d Cir.1975);
 
 cf. Gulfstream Aerospace Corp. v. Mayacamas Corp.,
 
 485 U.S. 271, 287, 108 S.Ct. 1138, 1142, 99 L.Ed.2d 296 (1988) (“[Ojrders granting or denying stays of ‘legal’ proceedings on ‘equitable’ grounds are not automatically appealable under § 1292(a)(1).”). Both parties now urge us to expressly hold that Congress implicitly overruled
 
 Lummus
 
 and its progeny when it enacted § 16(a)(2) of the Act. We decline to do so at this time; having determined there is jurisdiction in this case under § 16(a)(2), we need not reach the issue of whether there is also appellate jurisdiction under 28 U.S.C. § 1292(a)(1).
 

 2. Arbitrability of the present dispute
 

 The basic principles governing adjudication of arbitrability disputes in the federal courts were established by the Supreme Court in three cases known as the
 
 Steelworkers Trilogy.
 

 [1]
 

 These principles essentially provide: (1) “that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit,” (2) “that the question of arbitra-bility — whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination,” and (3) “that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.”
 
 AT & T Techs., Inc. v. Communications Workers of Am.,
 
 475 U.S. 643, 648-50, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986) (internal quotations and citations omitted) (summarizing the holdings of the three eases comprising the trilogy);
 
 accord Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied Services Union,
 
 788 F.2d 894, 897-98 (2d Cir.1986) (per curiam).
 

 Further, where the collective bargaining agreement contains an arbitration clause there is a presumption favoring arbitrability, particularly if the clause is broad and covers “any differences” arising with respect to interpretation of the agreement.
 
 See AT & T
 
 
 *-601
 

 Techs.,
 
 475 U.S. at 650, 106 S.Ct. at 1419. Moreover, “[d]oubts should be resolved in favor of coverage.”
 
 Id.
 
 (internal quotations and citation omitted);
 
 accord Woodcrest,
 
 788 F.2d at 898. However, even when the agreement contains a broad arbitration clause, a dispute is not arbitrable if (1) an express provision in the collective bargaining agreement excludes the particular grievance from arbitration, or (2) “forceful evidence of a purpose to exclude the claim from arbitration” is presented.
 
 AT & T Techs.,
 
 475 U.S. at 650, 106 S.Ct. at 1419;
 
 Woodcrest,
 
 788 F.2d at 898. Finally, we review the district court’s determination of arbitrability
 
 de novó. See McMahan Sec. Co. v. Forum Capital Markets L.P.,
 
 35 F.3d 82, 86 (2d Cir.1994).
 

 In the present ease, Article VIII.l of the Agreement contains a broad grant • of authority to the arbitrator to decide “all differences arising between the parties as to interpretation, application or performance of any part of this agreement.” The Union contends that because there is a broad grant of authority to the arbitrator under the Agreement, the dispute between the parties is arbitrable and the district court erred in proceeding to reach the merits of the dispute by interpreting the language of Article II to exclude the Partners’s employees from coverage under the Agreement. In doing so the district court, according to the Union, failed to properly abide by the principles established in the
 
 Steelworkers Trilogy.
 
 We. find the Union’s argument unpersuasive.
 

 The broad scope of the arbitration clause in the instant Agreement is expressly limited by Article I, which contains an express limitation to the scope of the arbitration clause in-so-far as it excludes from coverage under the agreement “employees employed by cleaning and maintenance contractors,” except to the extent that such employees are covered by the provisions of Article II of the Agreement. Accordingly, the presumption in favor of arbitrability extended to broadly written arbitration clauses does not apply to the present dispute unless the contractor cleaning employees at issue are excepted from non-coverage pursuant to Article II of the Agreement.
 

 Article II.3 only excepts from Article I’s exclusion cleaning and maintenance employees employed by contractors who (1) initially were employed in such a capacity by the building owner or agent “at the time the [cleaning] contract was awarded,” and/or (2) subsequently became employees of the cleaning contractor and its successors by virtue of the Agreement. Thus, under the terms of Article II, the six Partners’s employees who worked at the Building would be excepted from non-coverage under Article I — and the dispute would be subject to the arbitration clause, provided there are no other legal impediments to arbitration — under two circumstances: (1) they were employed as cleaning and maintenance persons by Maryland or the Building’s agent when Partners was awarded the contract in 1991, or (2) the six employees had been employed as cleaning and maintenance persons by Maryland or the Building’s agent and had subsequently become Partners’s employees through succession from previous cleaning contractors.
 

 The first circumstance did not occur, because Maryland and its Building agent did not employ cleaning and maintenance persons in the Building at the time the contract was awarded to Partners. Maryland and its agent had stopped employing cleaning and maintenance persons as of July 1980, when all of -the Building’s cleaning and maintenance services were contracted out to Electra.
 

 The second circumstance only can exist if any one of the six Partners’s employees was also one of the five cleaning employees employed by Maryland’s agent in July 1980, when the cleaning services were contracted out to Electra. Pursuant to Article' II.3, when the Building’s cleaning services were contracted out to Electra, the five Building employees then working as cleaning and maintenance employees were to be retained as employees of Electra, and were to continue being retained as employees of every other successor to Electra, namely by American in 1983, Partners in 1991, and Commercial in 1996, provided they did not retire or were not fired for cause. However, in the instant case, there is no evidence — and none was presented by the Union — that the six Part
 
 *-600
 
 ners’s employees working at the Building included one or more of the five employees originally working for the Building’s agent in 1980, who subsequently became contractor employees by virtue of succession under the terms of Article II. Nor is there any evidence that during the period of Partners’s cleaning contract there were employees of Maryland or its Building agent contemporaneously performing the same “category of work” as Partners’s employees, such that the new contractor, Commercial, had to hire the old contractor’s, Partners’s, employees.
 
 See Bevona v. 820 Second Ave. Assocs.,
 
 27 F.3d 37, 39 (2d Cir.1994) (per curiam) (in construing the very same collective bargaining agreement provi-' sions that are at issue in the instant case, held that new contractor had to retain old contractors’ employees who worked in the building only if the budding’s employees and the old contractor’s employees performed the same tasks during the same time period: “[I]f an independent contractor and an employee of the building owner are both performing the same ‘category of work’ at the building, the contractor is entitled to keep his job in the event the owner hires a new service contracting firm.”).
 

 Lacking such evidence, the Union attempts to argue that because
 
 sometime prior to 1980
 
 there were Building employees who performed cleaning services, those positions must be maintained by Commercial’s hiring of the Partners’s employees who performed similar tasks at the building. The argument is untenable in light of the clear language of Article II.6, which states that the work preservation provision of Article II applies “for the employees employed in a particular building,” and mentions nothing about preserving employee positions for future employees of contractors.
 

 Accordingly, the district court did not err in concluding that the present dispute was not arbitrable as a result of the six Partners’s employees not being covered by the Agreement.
 

 3. Preliminary Injunction
 

 The general standard for issuing a preliminary injunction requires that the movant show “ ‘(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.’ ”
 
 International Dairy Foods Ass’n v. Amestoy,
 
 92 F.3d 67, 70 (2d Cir. 1996) (quoting
 
 Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,
 
 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). We review the grant of a preliminary injunction for an abuse of discretion, and “will reverse the district court only if it relied on clearly erroneous findings of fact, misapprehended the law, or erred in formulating the injunction.”
 
 Id.
 

 The Union contends that the district court abused its discretion in issuing the preliminary injunction, because it failed to (1) hold a hearing and make findings on irreparable harm, and (2) require that the plaintiffs post a bond. There is no merit to these contentions.
 

 As we have previously explained, “ ‘there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.’ ”
 
 Consolidated Gold Fields PLC v. Minorco, S.A,
 
 871 F.2d 252, 256 (2d Cir.1989) (quoting
 
 Redac Project 6426, Inc. v. Allstate Ins. Co.,
 
 402 F.2d 789, 790 (2d Cir.1968)). Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute.
 
 See id.; see also Drywall Tapers & Pointers of Greater New York, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Int’l Ass’n,
 
 954 F.2d 69, 76-77 (2d Cir.1992). The parties in the instant matter do not dispute essential facts. Rather, they disagree over the proper interpretation of Article II of the Agreement; essentially, whether it provides for the preservation of “categories of work” previously performed by Building employees. Consequently, the district court was not required to conduct an evidentiary hearing. Moreover, in light of the conclusion above that the district court correctly determined that the dispute is not arbitrable because the six Partners’s employees are not covered by
 
 *-599
 
 the Agreement, Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.
 
 See Tucker Anthony Realty Corp. v. Schlesinger,
 
 888 F.2d 969, 975 (2d Cir.1989) (internal quotations omitted) (“To establish irreparable harm, [a party] must demonstrate an injury that is neither remote nor speculative, but actual and imminent.”).
 

 Although an injury that is adequately compensated by a monetary award is not considered “irreparable,”
 
 see e.g., ■ International Dairy Foods,
 
 92 F.3d at 71, here the time and resources Maryland would expend in arbitration is not compensable by any monetary award of attorneys’ fees or damages pursuant to the provisions of the Agreement or the Arbitration Act. .
 

 Finally, the district court did not abuse its discretion by not requiring Maryland to post security, because there is no risk of a monetary loss or damages to the Union while the injunction endures. The issue before the district court concerns the proper forum, and not preserving an award of damages.
 
 See Doctor’s Assocs., Inc. v. Stuart,
 
 85 F.3d 975, 985 (2d Cir.1996) (“[I]t has been held proper for the [district] court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued ‘to aid and preserve the court’s jurisdiction over the subject matter involved.’ ”) (quoting
 
 Ferguson v. Tabah,
 
 288 F.2d 665, 675 (2d Cir.1961)). Should the Union ultimately prevail, the dispute would go to arbitration and, were the arbitrator to rule in its favor, the present injunction does not prevent the Union from fully recovering any monetary award it may be entitled to.
 

 Accordingly, the district court did not abuse its discretion in issuing the preliminary injunction and in not requiring Maryland to post security.
 

 Conclusion
 

 For the reasons stated above, the judgment of the district court is affirmed.
 

 [1]
 

 .
 
 See Steelworkers v. American Mfg. Co.,
 
 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960),
 
 Steelworkers v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and
 
 Steelworkers v. Enterprise Wheel & Car Corp.,
 
 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).