17-4028-cv
*NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 19th day of December two thousand eighteen.

Present:     DENNIS JACOBS,
             ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
                  *Circuit Judges*.

_____

NCL (BAHAMAS) LTD., dba NORWEGIAN CRUISE LINES,

                  *Plaintiff-Appellee*,

          v.                                              17-4028-cv

O.W. BUNKER USA, INC., KELLY BEAUDIN STAPLETON,
Liquidating Trustee of the OWB USA Liquidating Trust,

                  *Defendants-Appellants*.

_____

Appearing for Appellants:     Robert E. O'Connor, Montgomery McCracken Walker &
                              Rhoads LLP (Davis Lee Wright, *on the brief*), New York, N.Y.

Appearing for Appellee:    Henry J. Rodriguez, Fowler Rodriguez (Michael A. Harowski, Fowler Rodriguez, and Jacob M. Pylman, LeClair Ryan, *on the brief*), New Orleans, La.

Appeal from the United States District Court for the District of Connecticut (Haight, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **VACATED** and **REMANDED**.

Defendants-Appellants O.W. Bunker USA, Inc. and Kelly Beaudin Stapleton, liquidating trustee of the OWB USA Liquidating Trust (collectively, "OWB USA"), appeal from the November 29, 2017, order of the United States District Court for the District of Connecticut (Haight, *J.*) preliminarily enjoining arbitration in London between OWB USA and NCL (Bahamas) Ltd. ("NCL") concerning a sale of bunkers in October of 2014. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

On October 8, 2014, NCL contracted with OWB USA to supply bunkers—tanks of fuel—for NCL's vessel the *Norwegian Spirit*, which was to make port in Piraeus, Greece, later that month. OWB USA was an affiliate of the worldwide O.W. Bunker Group, and the contract incorporated the O.W. Bunker Group's general terms and conditions. Two provisions are of particular importance to this appeal. First, the O.W. Bunker Group terms and conditions specify that English law governs the contract and that OWB USA can refer disputes under the contract to arbitration in London. Second, the terms and conditions provide that this forum-selection clause can be varied:

(a) These Terms and Conditions are subject to variation in circumstances where the physical supply of the Bunkers is being undertaken by a third party which insists that the Buyer is also bound by its own terms and conditions. In such circumstances, these Terms and Conditions shall be varied accordingly, and the Buyer shall be deemed to have read and accepted the terms and conditions imposed by the said third party.

(b) Without prejudice or limitation to the generality of the foregoing, in the event that the third party terms include:
…
(ii) A different law and/or forum selection for disputes to be determined, then such law selection and/or forum shall be incorporated into these terms and conditions.

App. at A-67, L.4.[1] Thus, a third-party supplier may insist that their terms and conditions apply to OWB USA's buyer and the third-party supplier's forum selection clause will then supersede OWB USA's forum-selection clause.

---

[1] Due to a drafting error, subsection L.4(b) contains two subsections labeled as "(ii)." We here refer to what but for the drafting error would be subsection (iii).

After NCL and OWB USA executed the October 2014 contract for the bunkers supply, OWB USA subcontracted with O.W. Bunker Malta ("OWB Malta"), a fellow member of the O.W. Bunker Group, to provide the bunkers for the *Norwegian Spirit*. In turn, OWB Malta subcontracted with EKO Industrial and Commercial Petroleum Company ("EKO"), a Greek company, to be the physical supplier of the bunkers. In all, three separate contracts controlled the transaction: NCL contracted with OWB USA, which contracted with OWB Malta, which contracted with EKO.

EKO timely delivered the bunkers to the *Norwegian Spirit* in Piraeus. Thereafter, EKO invoiced OWB Malta for the bunkers, and OWB USA invoiced NCL, calling for payment within 30 days of the issuance of the invoice. But before payment on either invoice was due, the O.W. Bunker Group became insolvent, and OWB USA filed for bankruptcy. When the Group collapsed, EKO decided to forgo collecting payment from OWB Malta and instead threatened to arrest the *Norwegian Spirit* via a maritime lien unless NCL paid the amount EKO had invoiced OWB Malta. The *Norwegian Spirit* was voyaging on a cruise with thousands of passengers at the time and capitulated to EKO's threat rather than risk disrupting the cruise. OWB USA's liquidating trustee eventually demanded that NCL pay OWB USA for the bunkers, and when NCL refused, the trustee notified NCL that it would seek arbitration in London. NCL sought an order enjoining the arbitration proceedings and declaring that NCL's debts to OWB USA were satisfied.

NCL now contends that EKO, as the third-party supplier, caused the forum-selection clause in OWB USA's terms and conditions to be varied by insisting that its terms and conditions be applied to the transaction. EKO's terms and conditions provide:

> This Agreement shall be governed by and construed in accordance with Greek law and any dispute which may arise in connection there with shall be submitted exclusively to the jurisdiction of Piraeus Courts.

App. at A-75, cl. 10. Thus, if EKO's terms and conditions vary the terms and conditions between OWB USA and NCL, then the parties would be required to litigate the instant dispute in Piraeus, Greece.

The district court granted NCL's request for a preliminary injunction of the London arbitration. *NCL (Bahamas) Ltd. v. O.W. Bunker USA, Inc.*, 280 F. Supp. 3d 324, 348 (D. Conn. 2017). The district court reasoned that if EKO insisted that its terms and conditions be applied to the transaction, then Clause L.4 of OWB USA's terms and conditions would be triggered to vary the forum-selection clause therein. *Id.* at 346. The district court concluded that EKO had so insisted because "O.W. Malta was aware of EKO's standard terms and conditions, and agreed to them" by accepting OWB Malta's order. *Id.* Thus, the district court granted a preliminary injunction of the London arbitration proceedings because it found that NCL was likely to succeed on the merits. *Id.* at 347–48. OWB USA timely appealed.

We review a district court's grant of a preliminary injunction for abuse of discretion and review its legal decisions de novo. *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,

3

764 F.3d 210, 214 (2d Cir. 2014). A preliminary injunction is appropriate where the movant has shown "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997) (internal quotation marks omitted). We have previously held that requiring a party to participate in arbitration to which it did not consent constitutes irreparable harm: "Although an injury that is adequately compensated by a monetary award is not considered 'irreparable,' here the time and resources [the movant] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages . . . ." *Id.* at 985 (citation omitted); *see also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003).

To determine whether NCL is likely to succeed on the merits, we must interpret OWB USA's terms and conditions. The terms and conditions contain a choice-of-law provision selecting English law to govern disputes, so we apply English law to determine whether EKO insisted that its terms and conditions apply to the transaction. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993). We review a district court's rulings on questions of foreign law and on contract interpretation de novo. *Fin. One. Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 339-40 (2d Cir. 2005); *see also* Fed. R. Civ. P. 44.1 ("The court's determination [of foreign law] must be treated as a ruling on a question of law.").

To resolve whether the forum-selection clause in OWB's terms and conditions was varied, we must determine whether EKO (1) insisted that its terms and conditions applied and (2) insisted that its terms and conditions applied to NCL specifically.

On the first inquiry, we must interpret the word "insist" as used in Clause L.4 according to English contract principles. Under English law, we determine the objective meaning of a contract's language, using the natural and ordinary meaning of the text, *Wood v. Capita Ins. Servs. Ltd.* [2017] EWCA (UKSC) 24; [2017] 2 W.L.R. 1095; 2017 WL 01084489, and considering the contract as a whole and in light of the contract and disputed clause's purpose, *CLP Holding Co. v. Singh & Anr* [2014] EWCA (Civ) 1103, at D5; [2015] 1 P. & C.R. DG2. The parties have offered two definitions of "insist" in this matter—NCL argues that "insist" means "demand or require," and OWB USA argues that it means "impose." As a practical matter, we see little difference between the proffered definitions—both definitions require that EKO take a firm position that its terms and conditions apply, which is consistent with dictionary definitions of "insist." *Insist*, Oxford English Dictionary (1971) ("to maintain persistently or positively that a thing is so"); *Insist*, Webster's New Collegiate Dictionary (10 ed. 1998) ("to be emphatic, firm, or resolute about something intended, demanded, or required"). Moreover, both definitions are consistent with "impose," which is used later in Clause L.4 to refer to the third-party supplier's insistence on its terms and conditions. Thus, the district court needed to first determine whether EKO had taken a firm position that NCL be bound by EKO's terms and conditions here.

We conclude that the district court's factual findings regarding EKO's insistence are insufficient to resolve this dispute. The district court's entire conclusion in this regard was that "O.W. Malta was aware of EKO's standard terms and conditions, and agreed to them" by

4

accepting OWB Malta's order. *NCL (Bahamas) Ltd*., 280 F. Supp. 3d at 346. The court inferred that since OWB Malta was a "regional affiliate of the world's largest bunker broker" and "EKO was a major local supplier of bunker fuels," the parties likely had many other dealings through which OWB Malta became aware of EKO's terms and conditions. *Id.* at 345. However, OWB Malta's agreement raises the issue of whether EKO insisted but does not answer it.

There are no findings as to whether, by trade custom or OWB Malta's experience with EKO, the EKO terms and conditions were requirements in actual effect or whether negotiations over such terms and conditions are customarily conducted or customarily foreclosed. On remand, the district court may consider evidence on those questions or any others, alternatively or in addition, to support a finding as to EKO's insistence. Without such a finding, the district court could not hold that NCL was likely to succeed on the forum-selection issue. A preliminary injunction was therefore not warranted.

We have considered the remainder of OWB USA's arguments and find them to be without merit. Accordingly, the order of the district court hereby is **VACATED**, and this matter is **REMANDED** for the district court to consider whether EKO insisted that its terms and conditions apply to NCL and hold any further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5