*Bissonnette v. LePage Bakeries Park St., LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15ᵗʰ day of February, two thousand twenty-three.

Present:

DEBRA ANN LIVINGSTON,
 *Chief Judge,*
JOSÉ A. CABRANES,
RAYMOND J. LOHIER, JR.,
RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
MICHAEL H. PARK,
WILLIAM J. NARDINI,
STEVEN J. MENASHI,
EUNICE C. LEE,
BETH ROBINSON,
MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
 *Circuit Judges.*

———————————————————————

NEAL BISSONNETTE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND TYLER WOJNAROWSKI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

 *Plaintiffs-Appellants,*

v.           20-1681

LEPAGE BAKERIES PARK ST., LLC, C.K.
SALES CO., LLC, AND FLOWERS FOODS,
INC.,

   *Defendants-Appellees*.

_____

| For Plaintiffs-Appellants: | Harold L. Lichten, (Matthew Thomson, Zachary L. Rubin, on the brief) Lichten & Liss-Riordan, P.C., Boston, MA. |
|---|---|
| For Defendants-Appellees: | Traci L. Lovitt (Matthew W. Lampe, Amanda K. Rice, on the brief), Jones Day, New York, NY & Detroit, MI, and Margaret Santen Hanrahan, Ogletree Deakins Nash Smoak & Stewart, P.C., Charlotte, NC, on the brief. |

   Following disposition of this appeal on May 5, 2022, Plaintiffs-Appellants filed a petition for rehearing *en banc*. The opinion was amended September 26, 2022, and a judge on the panel thereafter requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, the petition for rehearing *en banc* is hereby **DENIED**.

   Alison J. Nathan, *Circuit Judge*, joined by Beth Robinson and Myrna Pérez, *Circuit Judges*, dissents by opinion in the denial of rehearing *en banc*.

   Dennis Jacobs, *Circuit Judge*, filed a statement with respect to the denial of rehearing *en banc*.

   Rosemary S. Pooler, *Circuit Judge*, filed a statement with respect to the denial of rehearing *en banc*.

        FOR THE COURT:
        Catherine O'Hagan Wolfe, Clerk



2

ALISON J. NATHAN, *Circuit Judge*, joined by BETH ROBINSON and MYRNA PÉREZ, *Circuit Judges*, dissenting from the order denying rehearing *en banc*:

In this Circuit, rehearing *en banc* is quite rare. And for good reason. Rehearing cases only in exceptional circumstances promotes virtues such as judicial economy and collegiality and accords with our Circuit's longstanding tradition "of general deference to panel adjudication—a deference which holds whether or not the judges of the Court agree with the panel's disposition of the matter before it." *New York v. Dep't of Just.*, 964 F.3d 150, 166 (2d Cir. 2020) (Katzmann, C.J., dissenting from denial of rehearing *en banc*). Even so, one circumstance in which this rare step is warranted is when an intervening decision of the Supreme Court directly conflicts with circuit precedent.

The Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), decided after the panel issued its original decision in this case, is just such an intervening decision. Both *Saxon* and this case involve statutory interpretation of Section 1 of the Federal Arbitration Act (FAA). The FAA broadly requires courts to enforce arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 1 exempts from the Act's coverage "contracts of employment of seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." *Id.* § 1. Prior

to *Saxon*, our Court interpreted this exemption as limited to "workers involved in the transportation industries." *Adams v. Suozzi*, 433 F.3d 220, 226 n.5 (2d Cir. 2005) (citation omitted); *see also Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 982 (2d Cir. 1997); *Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972). The original majority opinion in this case applied this circuit precedent without the benefit of the Supreme Court's decision in *Saxon* and concluded that the exemption did not apply to Appellants, truck drivers transporting baked goods. The majority so held because the Appellants are employed by a bakery conglomerate, which the court determined is not an employer in the transportation industry. Accordingly, the original opinion concluded that the Plaintiff truck drivers would have to pursue their claims for unpaid wages through arbitration, rather than in court. *Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650, 657 (2d Cir.), *amended and superseded on reh'g*, 49 F.4th 655 (2d Cir. 2022). Judge Pooler's original dissent argued that this was error from the get-go. *See Bissonnette*, 33 F.4th at 662–68. Agree or disagree, prior to *Saxon*, the original majority opinion's conclusion constituted an available application of then-controlling Second Circuit precedent.

2

But then the Supreme Court handed down *Saxon*. This intervening decision expressly rejects the notion embedded in our circuit precedent that the industry in which an employer operates, rather than the work that the employee does, determines whether the employee belongs to a "class of workers engaged in foreign or interstate commerce." Saxon, a ramp supervisor at Southwest Airlines whose work regularly required her to load and unload cargo from planes, brought claims against Southwest under the Fair Labor Standards Act. *Saxon*, 142 S. Ct. at 1787. Southwest contended that Saxon's claims had to be arbitrated because the Section 1 exemption applied only to workers who physically move goods across state or international boundaries. In contrast, Saxon argued that the exemption covers all workers who carry out the customary work of airlines. *Id.* at 1790–91. The Supreme Court, rejecting both interpretations, concluded that Saxon fit within the exemption because "Saxon is . . . a member of a 'class of workers' based on what *she does* at Southwest, *not what Southwest does generally*." *Id.* at 1788 (emphasis added). Because what Saxon does is load cargo on and off airplanes, the Supreme Court held that she could litigate, rather than arbitrate, her claims. *Id.* at 1793.

In reaching this conclusion, Justice Thomas, writing for a unanimous Court, focused on the text of Section 1 exempting "seamen, railroad employees, [and] any

3

other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

He reasoned that "[b]ecause 'seamen' includes only those who work on board a vessel, they constitute a subset of workers engaged in the maritime shipping industry," not the entire industry. *Id.* at 1791. The carveout, therefore, does not "identify[] transportation workers on an industrywide basis." *Id.* Based on the text of the statute, the Court further provided a simple and straightforward test to determine who is exempted. The Court held that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* at 1789.

Unsurprisingly, the panel in this case agreed to panel rehearing in light of *Saxon*. But after considering the Supreme Court's opinion, the panel majority issued an amended opinion that continues to do the opposite of what *Saxon*'s reasoning and holding require. The amended majority opinion does not consider the work performed by Appellants—driving trucks and delivering goods—in determining whether they are transportation workers. Rather, the amended opinion concludes that "the distinctions drawn in *Saxon* do not come into play" because they apply only when an employer operates in a transportation industry, and the employer in this case is a bakery rather than something like an airline or a

4

trucking company. *Bissonnette*, 49 F.4th at 661–62. Thus, the amended majority opinion continues to identify transportation workers on an industrywide basis and expressly holds: "[T]he plaintiffs are not 'transportation workers,' even though they drive trucks, because they are in the bakery industry, not a transportation industry." *Id.* at 657.

The amended majority opinion attempts to reconcile this move with *Saxon* by ignoring Justice Thomas's textual reasoning and supplanting the Supreme Court's clear interpretive directives with its own atextual test. *Saxon* explained that the FAA's use of the words "workers" and "engaged," rather than "employees" or "servants," emphasizes "the *performance* of work" and "the actual work that the members of the class, as a whole, typically carry out." *Saxon*, 142 S. Ct. at 1788 (emphasis in original). Paying no heed to this analysis, the amended opinion instead requires workers to establish eligibility for the Section 1 exemption based on both the work they perform *and* the work their employer does on an industry-wide basis. *See Bissonnette*, 49 F.4th at 661.

The amended opinion's primary justification for establishing this multilayered framework, aside from fidelity to past Second Circuit precedent, is that the examples of "'seamen' and 'railroad employees' . . . . are telling because

5

they locate the 'transportation worker' in the context of a *transportation industry*." *Id.* at 660. In so reasoning, the majority sticks with what the Supreme Court expressly termed a "flawed premise[:] that 'seamen' and 'railroad employees' are both industrywide categories." *Saxon*, 142 S. Ct. at 1791. Whereas Justice Thomas rejected this premise because the term "seamen" does not encompass the entire shipping industry, the amended opinion presumes that all "seamen" work for transportation companies. But just as truck drivers sometimes work for bakery conglomerates, seamen might work for companies in a non-transportation industry that operate their own ships, say, fisheries, large retailers, or oil companies. It is impossible to reconcile the amended opinion's analysis with the Supreme Court's contrary conclusion that "the two terms [seamen and railroad employees] cannot share a 'common attribute' of identifying transportation workers on an industrywide basis." *Id.*

Ultimately, in order to rationalize the imposition of an additional test contrary to *Saxon's* holding, the amended majority opinion falls back on the FAA's pro-arbitration statutory purpose and the purported need for further limits on Section 1's scope. *See Bissonnette*, 49 F.4th at 660–61; *see also* Statement of Judge Jacobs at 5 ("The problem is the frustration of the congressional preference for

arbitration by expanding the exemption beyond its purpose and any definable limits . . . ."). But *Saxon* rejected this argument too. Southwest similarly argued that "the FAA's 'proarbitration purposes' . . . counsel[] in favor of an interpretation that errs on the side of fewer § 1 exemptions," but Justice Thomas responded, "we are not 'free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal' . . . and we have no warrant to elevate vague invocations of statutory purpose over the words Congress chose." *Saxon*, 142 S. Ct. at 1792–93 (quoting *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019)). Nor do we need to. *Saxon* provides a "workable principle," Statement of Judge Jacobs at 4, in its statutory holding that "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption," *Saxon* at 1789.

In sum, maintaining the "transportation industry" requirement is, as *Saxon* demonstrates and holds, unsupported by the text of the FAA. *Saxon* tells us that in interpreting the Section 1 exemption, we must attend to the nature of a worker's duties, not the industry of their employer. Our prior precedent and the amended opinion do not so attend. Because the amended majority opinion is in direct

conflict with the textual reasoning and holding of the Supreme Court's intervening

decision in *Saxon*, I respectfully dissent from the denial of rehearing *en banc*.

DENNIS JACOBS, *Circuit Judge*, Statement of Views in Support of the Denial of

Rehearing in Banc[1]:

The issue is whether the plaintiffs, purveyors of baked goods in

Connecticut, are "transportation workers" who, under an exception to the

Federal Arbitration Act (FAA), cannot be compelled by contract to arbitrate.

9 U.S.C. § 1; Cir. City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001).  As the

Supreme Court has explained, not everyone working in a transportation industry

is a transportation worker: back-office staff and lawyers come to mind.  Sw.

Airlines Co. v. Saxon, 142 S. Ct. 1783, 1788 (2022).  At the same time, every

appellate opinion that grants exemption to a transportation worker under

Section 1 of the FAA decides or presumes the prior question of whether that

person works in a transportation industry.[2]  So much for a circuit split.

_____

[1] As a senior judge, I have no vote on whether to rehear a case in banc.  As a member of the panel that decided the case that is the subject of the in banc order, however, I am privileged to respond to an opinion dissenting from the denial of rehearing.

[2] See, e.g., Waithaka v. Amazon.com, Inc., 966 F.3d 10, 23 (1st Cir. 2020), cert. denied 141 S. Ct. 2794 (2021) ("We simply point out, as is evident here, that the nature of the business for which the workers perform their activities is important in determining whether the contracts of a class of workers are covered by Section 1."); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 907 (9th Cir. 2020), cert. denied 141 S. Ct. 1374 (2021) ("Plaintiffs . . . contracted with Amazon Logistics, Inc. to provide delivery services for . . . . Amazon's app-based delivery

1

The plaintiffs in <u>Bissonnette</u> buy baked goods from a company that makes

a score of buns, rolls, and snack cakes, as well as Wonder Bread. <u>Bissonnette v.</u>

<u>LePage Bakeries Park St., LLC</u>, 49 F.4th 655, 658 (2d Cir. 2022). They purchase

local distribution rights, solicit business from shops and supermarkets within

their territory, sell the goods to the stores they sign up, arrange the fresh goods

on the shelves, and carry away the rest. <u>Id.</u> They earn the difference between the

prices at which they buy and sell the baked goods. <u>Id.</u> To do this, they drive a

truck. If they could be deemed transportation workers simply by eliding the

foundational question of whether they work in a transportation industry, so

---

program, Amazon Flex . . . ."); <u>Palcko v. Airborne Express, Inc.</u>, 372 F.3d 588, 590 (3d Cir. 2004) ("[Defendant] is a package transportation and delivery company . . . ."); <u>Harden v. Roadway Package Sys., Inc.</u>, 249 F.3d 1137, 1139 (9th Cir. 2001) (plaintiff engaged to "provid[e] a small package information, transportation and delivery service throughout the United States"); <u>see also, e.g.</u>, <u>Hill v. Rent-A-Center, Inc.</u>, 398 F.3d 1286, 1290 (11th Cir. 2005) ("Because [plaintiff] was not within a class of workers within the transportation industry, his employment contract is not exempted from the FAA's mandatory arbitration provisions."); <u>Lenz v. Yellow Transp., Inc.</u>, 431 F.3d 348, 349 (8th Cir. 2005) ("[Plaintiff] works in the transportation industry . . . . A . . . difficult question arises when an employee, like [plaintiff], works for a transportation company but is not a truck driver or transporter of goods."); <u>but see</u> <u>Carmona v. Domino's Pizza, LLC</u>, 21 F.4th 627, 629–30 (9th Cir. 2021), <u>vacated</u> 143 S. Ct. 361 (2022) (concluding that truck drivers for Domino's Pizza were transportation workers).

2

could the undertaker who drives a hearse, the milkman in the morning, the chef in a food truck, and the person who delivers a pepperoni with extra cheese.

The Supreme Court in Saxon concluded that a person who works as a ramp supervisor for Southwest Airlines--supervising workers who "physically load and unload baggage, airmail, and freight," and pitching in herself--qualifies as a "transportation worker." Saxon, 142 S. Ct. at 1787. The self-evident premise of Saxon was that an airline is a transportation industry. Id. ("Southwest Airlines moves a lot of cargo."). The Court rejected the plaintiff's industrywide approach because it would have made all workers in a transportation industry into transportation workers. Id. at 1791 ("We . . . reject Saxon's argument that § 1 exempts virtually all employees of major transportation providers."). This makes sense: "those who design Southwest's website" are not transportation workers, nor are "those who run the Southwest credit-card points program." Id. at 1790–91. Under Saxon, we look at "the actual work that members of the class, as a whole, typically carry out" to determine who *within a transportation industry* qualifies as a transportation worker. Id. at 1788. But the Court in Saxon had no cause to consider the status of workers who transport goods in an industry that is *not* a transportation industry.

To be exempt from contractually compelled arbitration, a worker must be one who works in a transportation industry. We know this because (i) the statute exempts "contracts of employment of seamen, railroad employees, or any other *class of workers* engaged in foreign or interstate commerce," 9 U.S.C. § 1 (emphasis added), and because (ii) the Supreme Court tells us the statute is "controlled and defined by reference to the enumerated *categories of workers* which are recited," <u>Cir. City</u>, 532 U.S. at 115 (emphasis added). The prime error that has been rejected in this <u>in banc</u> poll is to skip the question of whether the plaintiffs work in a transportation industry, and to consider only whether they move things about.

The statute creates an exemption for those who work moving goods and passengers in one of the mighty engines of interstate and international transport, not for everyone who works on wheels. As this Court's opinion frames the resulting principle: an "individual works in a transportation industry if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement." <u>Bissonnette</u>, 49 F.4th at 661–62. If my friends have some other workable principle for deciding the question, I have not

4

seen it.  Their way leads to non-exclusive lists of factors, tests, and elements, enumerated--but not limited--to encompass all possibly relevant circumstances, then choreographed into steps and skewered into prongs, reviewed for clear error to the extent found as facts but weighed <u>de novo</u>, and afforded due deference as to this but not that.  And all of that would be overlaid by disputes over whether the transportation is foreign or interstate commerce.[3]  The consequence is that many such motions to compel arbitration would grow into sizable litigations and close-fought appeals.

The resulting problem is not overwork for the courts; we turn the lights on to decide questions.  The problem is the frustration of the congressional preference for arbitration by expanding the exemption beyond its purpose and any definable limits, and requiring that motions to compel arbitration run a

---

[3] The plaintiffs work only in Connecticut.  <u>Bissonnette</u>, 49 F.4th at 657.  The dissent posits that they are nevertheless "engaged in foreign or interstate commerce" because "[t]he loaves of Wonder Bread they transport are delivered to the defendant's warehouse from commercial bakeries outside Connecticut." <u>Id.</u> at 669 (Pooler, J., dissenting).  I agree that, under <u>Saxon</u>, the employer's entanglement with interstate commerce affects whether the worker falls under Section 1.  142 S. Ct. at 1789.  But surely what matters is the interstate character of the employer's industry, not the interstate character of the Wonder Bread.

gauntlet of expensive and uncertain litigation. My friends dissent without advancing a useful alternative to the Court's opinion.

Unfortunately, Section 1 will often generate puzzles, anomalies, and close cases. But this case is not one of them. Reader, pass by.

POOLER, *Circuit Judge*, Statement in Opposition to the Denial of Rehearing En Banc[1]

The Court today decides not to convene en banc to review *Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655 (2d Cir. 2022), a decision that directly contravenes the Supreme Court's recent opinion in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). The panel refused to amend the majority opinion accordingly following *Saxon* and instead fashioned its own definition of transportation workers under the Federal Arbitration Act ("FAA") out of whole cloth without any reference to the FAA's text, a dictionary, the business world, or—for that matter—any case law. The Court's decision puts this Circuit's precedent regrettably out of step with both the Supreme Court and decisions from sister Circuits.

The named plaintiffs, Neal Bissonnette and Tyler Wojnarowski, are commercial truck drivers who represent a putative class of plaintiffs who distribute baked goods in Connecticut for Flowers Foods, Inc. and two of its

---

[1] As a senior judge, I cannot vote on whether to rehear a case en banc, Fed. R. App. P. 35(a), and thus cannot dissent. As a member of the original panel that decided the case that is the subject of the en banc order, however, I may file a statement of views in the circumstances here, where an active judge has filed an opinion respecting that order.

subsidiaries, LePage Bakeries Park St., LLC and C.K. Sales Co. (collectively, "Defendants"). To work for Defendants, each putative class member was required to form a corporate entity that then entered into a "Distribution Agreement" with C.K. Sales, entitling the corporation to certain distribution rights in exchange for monetary consideration. Each Distribution Agreement contains a mandatory and binding arbitration provision. The Distribution Agreements require plaintiffs to work at least forty hours per week, driving vehicles to stores within a territory designated by Defendants, delivering Defendants' baked goods, and arranging the products on the shelves according to Defendants' standards. Plaintiffs must comply with Defendants' policies and procedures, including the time, place, and manner of pick-ups and deliveries. Plaintiffs must return to the warehouse each day after completing their deliveries to upload data to Defendants' system. Plaintiffs are responsible for obtaining and insuring their own delivery vehicles.

Plaintiffs filed suit seeking certification as a Fair Labor Standards Act ("FLSA") collective action and a Federal Rule of Civil Procedure 23 class action; damages for unpaid wage and other losses; restitution of payments made by plaintiffs to purchase their routes; statutory penalties and liquidated damages

under Connecticut law and the FLSA; and an injunction ordering Defendants to reclassify plaintiffs as employees. However, the appeal did not directly deal with the substance of the complaint's allegations.

There were two principal issues on appeal. First, whether the FAA governed the parties' arbitration provision in the Distribution Agreement or whether plaintiffs fall within the FAA's Section 1 exemption for "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1 – in other words, "transportation workers," *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Second, whether, if the FAA did not govern the arbitration provision, Connecticut law nevertheless compelled arbitration. Because the majority held that the truck driver-plaintiffs were not transportation workers and thus the arbitration provision applied, the majority did not reach the second issue regarding Connecticut law.

When the panel first considered this case prior to the Supreme Court issuing *Saxon*, I thought the answer certain – that truck drivers are transportation workers. *See Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650, 662 (2d Cir. 2022) (Pooler, *J.*, dissenting). Among the district courts, "one area of clear common ground" regarding the exemption to the FAA has been that truck

drivers qualify. *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008) (Sullivan, *J.*). Other circuits agree. *See Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if [the employee] were a truck driver, he would be considered a transportation worker under § 1 of the FAA."); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593-94 (3d Cir. 2004) (presuming that truck drivers fall within the residual clause of Section 1 of the FAA); *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001) (concluding that a "delivery driver" was a transportation worker).

But the majority inexplicably concluded that because plaintiffs deliver baked goods, they "are in the bakery industry, not a transportation industry." *See Bissonnette*, 49 F.4th at 657. *But see Int'l Bhd. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012) ("[A] trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party . . . .").

A month after *Bissonnette* issued, the Supreme Court resolved a circuit split when it handed down *Saxon*. In deciding whether an employee is a "transportation worker" under 9 U.S.C. § 1, *Saxon* holds that a person is "a member of a 'class of workers' based on what she does" for her employer, "not

4

what [the employer] does generally." 142 S. Ct. at 1788. When given the

opportunity to revise its opinion to conform with *Saxon'*s clear holding, the

majority elected not to. The revised decision clings to the fallacy that plaintiffs

are not transportation workers, despite acknowledging they "spend appreciable

parts of their working days moving goods from place to place by truck."

*Bissonnette*, 49 F.4th at 661.

*Bissonnette* cannot be reconciled with *Saxon*'s clear direction. In reaching

the result that it did, the majority ignored *Saxon*'s instruction to analyze "the

actual work that the members of the class . . . carry out." 142 S. Ct. at 1788.

I.      **Plaintiffs are "transportation workers" under the FAA.**

FAA Section 1 sets out an exemption for employment contracts of

"seamen, railroad employees, [and] any other class of workers engaged in

foreign or interstate commerce," 9 U.S.C. § 1, of which the Supreme Court has

stated that the residual clause refers to "transportation workers," *Cir. City Stores,*

*Inc.*, 532 U.S. at 119. Because neither the FAA nor the Supreme Court provides us

with a definition for "transportation workers," the majority looks to the

examples given, focusing on the context of the transportation industry. *See*

*Bissonnette*, 49 F.4th at 660. The majority then creates its own definition of

"transportation worker" completely untethered to the FAA's statutory text and states that "an individual works in a transportation industry if the industry in which the individual works pegs its charges chiefly to the movement of goods or passengers, and the industry's predominant source of commercial revenue is generated by that movement." *Id.* at 661.

Compare that with the approach taken in *Saxon*. There, the Supreme Court held that a ramp supervisor for Southwest Airlines belonged to a class of transportation workers engaged in foreign or interstate commerce and thus exempt from the FAA. *Saxon*, 142 S. Ct. at 1787, 1793. In reaching its conclusion, the Court first sought to "defin[e] the relevant 'class of workers' to which Saxon belong[ed]." *Id*. at 1788-89. The Court reasoned that "[t]he word 'workers' directs the interpreter's attention to 'the *performance* of work'" and "the word 'engaged' . . . similarly emphasizes the actual work that the members of the class, as a whole, typically carry out." *Id.* at 1788. Accordingly, Saxon was "a member of a 'class of workers' based on *what she does at Southwest, not what Southwest does generally*." *Id.* (emphasis added). Second, the Court determined that this class of workers was "engaged in foreign or interstate commerce" because "any class of

workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id.* at 1789.

Applying *Saxon*'s two-step framework, first, plaintiffs here plainly belong to a class of workers who, in the majority's words, "spend appreciable parts of their working days moving goods from place to place by truck." *Bissonnette*, 49 F.4th at 661. But the majority finds that because plaintiffs' commerce is in "breads, buns, rolls, and snack cakes," and the movement of such commerce is "at most a component of [the] price," that plaintiffs are bakery workers. *Id.* at 662. The majority entirely disregards that plaintiffs' work principally consists of driving Department of Transportation-registered commercial trucks delivering Defendant's products.

The majority declined to engage in *Saxon*'s two-step analysis. Having concluded that plaintiffs are bakery workers, it did "not consider whether this case could be decided on the ground that the interstate element of the exclusion is not satisfied," admitting that it is not a "simple" inquiry. *See id.* at 662 n.5. Though plaintiffs do not cross state lines, even the district court acknowledged that Defendants' products are manufactured out of state and are delivered to warehouses in-state, and as such, plaintiffs meet the threshold of being "engaged

7

in . . . interstate commerce." *Bissonette v. Lepage Bakeries Park St., LLC*, 460 F. Supp. 3d 191, 198 (D. Conn. 2020). Saxon also never crossed state lines, but rather "load[ed] cargo on a plane bound for interstate transit." *Saxon*, 142 S. Ct. at 1790. The Supreme Court held that sufficed, as "airplane cargo loaders plainly do perform 'activities within the flow of interstate commerce' when they handle goods traveling in interstate . . . commerce." *Id.* at 1792. Prior to *Saxon*, other circuits reached the same result – the First and Ninth Circuits, for instance, held that so-called "last-mile delivery workers" for Amazon are transportation workers "[b]y virtue of their work transporting goods or people 'within the flow of interstate commerce,'" despite never personally crossing state lines. *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916-19 (9th Cir. 2020) (finding that local delivery drivers who contracted with Amazon to provide delivery services are transportation workers engaged in interstate commerce and thus exempt from FAA § 1).

Because the core of plaintiffs' work entails transporting goods through interstate commerce, I concluded that plaintiffs are "transportation workers" exempt from the FAA. *Bissonnette*, 49 F.4th at 674 (Pooler, *J.*, dissenting).

**II.    The Majority ignores and sidesteps *Saxon's* holding.**

The rationale of the majority opinion cannot be squared with *Saxon*. As the Supreme Court observed, the word "workers" in the FAA directs the interpretation to "the performance of work." *Saxon*, 142 S. Ct. at 1788. Despite this direction, the majority concludes that plaintiffs "are in the bakery industry, not a transportation industry," *Bissonnette*, 49 F.4th at 657, because "the stores and restaurants are not buying the movement of the baked goods, so long as they arrive," *id*. at 661. Plaintiffs are truck drivers, not bakers, and yet the majority cannot look past the fact that their employer is a bakery, despite the actual work plaintiffs do for the bakery. By focusing on the nature of Defendants' business, and not on the nature of plaintiffs' work, the majority takes an industrywide approach—an approach explicitly rejected by *Saxon*.

The majority attempts to sidestep *Saxon* by reasoning that its work-focused distinction does not come into play. Our Circuit, the majority claims, recognized that "only a worker in a transportation industry can be classified as a transportation worker" in *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972) and *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979 (2d Cir. 1997). *Bissonnette*, 49 F.4th at 661. Notably, both

9

the cases relied on by the majority predate the Supreme Court's decision in

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), in which the Court held that

Section 1 of the FAA "exempts . . . only contracts of employment of

transportation workers," *id.* at 119. Moreover, neither of those two cases involved

workers whose occupations required the movement of goods or passengers. *See*

*Erving*, 468 F.2d at 1066, 1069 (noting that Erving, a professional basketball

player, was not in the transportation industry); *Md. Cas.Co.*,107 F.3d at 980-82

(concluding that commercial cleaners were not in the transportation industry).

The majority claims that because Saxon worked for an airline, the Supreme Court

did not need to elaborate that only those employed by transportation industry

employers can be held as transportation workers. *See Bissonnette*, 49 F.4th at 661.

That is not what *Saxon* says. Indeed, the majority's interpretation is far

more cramped than what *Saxon* sets out. The majority ignored Saxon's emphasis

on Southwest Airlines' "predominant source of commercial revenue," *id.*, in

determining whether Saxon was a transportation worker, instead focusing on

"what [Saxon] does at Southwest, not what Southwest does generally," *Saxon*,

142 S. Ct. at 1788. *Saxon* affirmed the Seventh Circuit's decision recognizing that

"a transportation worker need not work for a transportation company." *Saxon v.*

10

*Sw. Airlines Co.*, 993 F.3d 492, 497 (7th Cir. 2021), *aff'd*, *Saxon*, 142 S. Ct. 1783.

Other courts hold the same. *See Waithaka*, 966 F.3d at 23 ("[A] class of workers [need not] be employed by an interstate transportation business [n]or a business of a certain geographic scope to fall within the Section 1 exemption."); *Canales v. Lepage Bakeries Park St. LLC*, 596 F. Supp. 3d 261, 270 (D. Mass. 2022) (rejecting the argument that "an employer [must] be a transportation company for § 1 to apply" in case against the same defendants as here). These decisions align with the FAA's text, which asks whether an individual belongs to a class of workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. The text does not ask for whom the worker undertakes their transportation work.

Those who operate commercial trucks to deliver products, as plaintiffs do, are paradigmatically "engaged in foreign or interstate commerce." *See* 9 U.S.C. § 1. If *Bissonnette* remains the law of this Circuit, it does so by departing from the FAA's text, the Supreme Court's clear instructions, and decades of caselaw nationwide. I urge plaintiffs to seek certiorari, as now, only the Supreme Court can correct the majority's mistakes.

For these reasons, I respectfully submit this statement to accompany the denial of rehearing en banc.